## No. 4118.

### G. W. W. GOODWYN *v.* PERRY & CO.

Where judgment being rendered in this case on the sixth of May, 1872, in favor of defendants, an appeal was granted on the fourteenth of the same month, returnable on the first Monday in November, on motion to dismiss the appeal on the ground that said first Monday in November was not the legal return day;

Held—That the first return day after this appeal was taken, being the third Monday in May; that the judgment having been rendered on the tenth of the same month; and that the transcript of the case containing over two hundred pages; it must be presumed that the judge *a quo* thought it could not have been completed by that time, as the court adjourns before the first of June to the first Monday in November, and it follows that the first Monday in November was the proper return day.

Where a creditor, ignorant of the fact that his claim on his debtor was secured, wrote to other creditors of the same, expressing his assent to accepting concurrently with them the surrender of property offered on certain conditions by said debtor, because he believed that he was in no better condition than those creditors;

Held—That this was a contract which was void from error in the motive, inasmuch as it proceeded from a cause supposed to exist, which in reality did not exist, and because its existence was a condition precedent to the contract.

APPEAL from the Seventh District Court, parish of Orleans. *Collens*, J. *Hyman, Wallace* and *Handlin*, for defendants and appellees. *Randolph, Singleton* and *Browne*, for plaintiff and appellant.

#### On Motion to Dismiss the Appeal.

Justices concurring: Ludeling, Taliaferro, Howell, Morgan, Wyly.

MORGAN, J. Judgment was rendered in this case on the sixth May, 1872, in favor of defendant. An appeal was asked for and allowed on the fourteenth May, returnable on the first Monday in November.

We are asked to dismiss the appeal on the grounds that there were six days to the third Monday in May, and that as there appears no proof or suggestion to the contrary, the presumption is there was ample time to prepare so small a record, and the first Monday of November was not the legal return day; and because this court was in session when the appeal was taken, and the law provides that, during the term, appeals shall be returnable on the first and third Mondays of every month.

The law relied upon (acts of 1870, p. 99, section 1,) provides that in all cases of appeal the judge of the court from which it is taken shall

make the appeal returnable to the Supreme Court at the next return day for appeals from the parish, if there shall be time enough after granting it to give the notice required by law and to prepare the record; if not, then he shall fix the return day for some day within the next term after the appeal is granted, allowing sufficient time to give the citation required by law, and to prepare the record, if sufficient time within the term shall remain; if not, then he shall fix the return day for the following term.

The first return day after this appeal was taken was the third Monday in May. As the judgment was only rendered on the tenth of May, and as this transcript contains over two hundred pages, we must presume that the District Court thought it could not have been completed by that time.

As this court adjourns before the first of June to the first Monday in November, it follows that the first Monday in November was the proper return day..

The motion to dismiss is therefore overruled.

---

## On the Merits.

Justices concurring: Ludeling, Taliaferro, Morgan.

TALIAFERRO, J. This is an injunction suit which has grown out of the case of Perry & Co. v. Austin & Goodwyn, before this court in 1872.

See 24 An. p. —. Upon the return of the mandate of this court in the latter case, execution was issued against the defendants, Austin & Goodwyn. G. W. W. Goodwyn obtained an injunction to stay the proceedings under execution, on the ground that subsequent to the appeal of Austin & Goodwyn to the Supreme Court in the case of Perry & Co. v. Austin & Goodwyn, and while that appeal was pending Perry & Co. accepted a proposition, made by Goodwyn, solely bound for the debts of his firm, to pay the creditors a certain portion of their debts, the firm of Austin & Goodwyn being insolvent. The plaintiff alleges that he was entirely discharged from all futher liability to Perry & Co. by their acceptance and ratification of the surrender of his property. The defendants in injunction filed an exception to the proceeding, alleging various grounds, and prayed that the injunction be dissolved with damages. Judgment was rendered dissolving the injunction and condemning Goodwyn, the principal, and Philip Hallorand, surety on the injunction bond to pay *in solido* to the defendants, Perry & Co. seventy-five dollars special damages, with three per cent. additional interest on the principal of the judgment injoined till paid, and costs.

From this judgment the plaintiff has appealed. It appears that

pending the suit of Perry & Co. against Austin & Goodwyn, the last named firm, finding themselves unable to meet their obligations, propositions were made through Goodwyn to make a surrender of their property and assets to their creditors, on condition that Goodwyn should retain his tools which he used in his trade, and a small amount in money to begin a small business. Bridgeford & Co., of Louisville, Kentucky, were creditors for the largest amount, and it appears that they accepted the proposition of surrender, and were active in urging the other creditors to do so. All the creditors, except Perry & Co., were prompt in closing with the proposal of Goodwyn. Bridgeford & Co. wrote at considerable length to Perry & Co., at Albany, New York, representing that the acceptance of the surrender was the best that could be done; that by acceding to the proposal the creditors would realize from fifty to sixty cents on the dollar for their debts; whereas if they refused, the insolvents would be compelled to go into bankruptcy, and if so, the creditors would realize little or nothing. In reply Perry & Co. wrote on the twenty-third September, 1870, as follows:

"Messrs. Bridgeford & Co., Louisville, Ky. :

"Gentlemen—In reply to your favor of the nineteenth instant respecting our claim against Mr. G. W. W. Goodwyn, we leave the matter entirely in your hands, feeling confident you will act for us the same as you would for your own interest. Whatever arrangement you may deem best to come to will be perfectly satisfactory to us.

"Respectfully yours, PERRY & Co."

On the same day they wrote to their attorneys in New Orleans:

"ALBANY, September 23, 1870.

"Messrs. Wallace & Handlin :

"Gentlemen—We have been informed by Messrs. Bridgeford & Co., of Louisville, Ky., that Mr. G. W. W. Goodwyn has assigned for the benefit of his creditors, retaining the right to hold $400 in cash and $150 in tools. We suppose you have obtained no special security on our account, and that we will have to accept the terms with the others.

"Yours, respectfully, PERRY & Co."

Their attorneys answer this letter on the twenty-eighth of September. After saying that they know nothing of any steps being taken by Goodwyn towards an assignment they write: "Instead of your case being in the fix you suppose, we, on the contrary, think we have good security, one who owns plenty of real estate. We have, therefore, no doubt about our ability to make the money as soon as the appellate court decides the case. Our courts open again in November.

"Your obedient servants,

"WALLACE & HANDLIN."

Perry & Co., therefore, wrote again to Bridgeford & Co.:

"ALBANY, October 8, 1870.

"Messrs. Bridgeford & Co., Louisville, Ky.:

"Gentlemen—With regard to our claim v. Mr. G. W. W. Goodwyn, we have just received word from our attorneys that they hold ample security for the payment of the same, and, of course, we can not agree to give up this security.

"Respectfully yours,

PERRY & CO."

It seems there can be no doubt that Perry & Co. when they assented to the proposition communicated to them by Bridgeford & Co., believed their debt stood on no better ground than that of the other creditors, and were influenced by the letter of Bridgeford & Co. to agree to accept the surrender, thinking they would get a larger percentage on their claim by so doing than by forcing their debtor into bankruptcy, and thereby realize but little·after the charges of the bankrupt court were paid. Their debt, in point of fact, was secured at the time they wrote to Bridgeford & Co. under date of September 23, but they were ignorant of it. The consent given at that date proceeded from a cause supposed by them to exist, which in reality did not exist; and its existence was a condition precedent to the contract. The contract is, therefore, void from error in the motive. C. C. 1815, 1818, 1819, 1820, 1821. Also C. C. articles 1816–1840, et sequents. 2 L. 3; 6 L. 511.

The defendants, as soon as they were informed by their attorneys that their debt was fully secured promptly retracted their consent given in ignorance to accept the plaintiff's surrender. We think the decree of the lower court correct.

Judgment affirmed.

———

WYLY, J., dissenting. On the thirteenth of September, 1870, Goodwyn made an assignment of all his property, except four hundred dollars in cash and one hundred and fifty dollars worth of tools, to his creditors, in whose behalf Bridgeford & Co. accepted the assignment and gave Goodwyn a "full and complete discharge of their said claims," * * * "so that this agreement shall have the effect of being, as to such creditors and all of them, a receipt in full against their claims or the claims of any of them."

On the sixteenth of September, 1870, Bridgeford & Co. wrote to Perry & Co. that: "We asked Mr. Goodwyn if he would be willing to assign everything to us for the benefit of his creditors, and he replied that he did not want everything in the wide-world taken from him, and have no support for his large family; that he had been unfortunate and was satisfied that he had not wronged any of his creditors

out of anything, and would not make an assigment without a release from all his creditors of any further claim against him, and a small sum to support his family a short time, to enable him to get into a small business. We then went and consulted our attorney in regard to the matter, and he desired to know if we would take the responsibility of entering into an agreement with Goodwyn, releasing him from all further claims of his creditors against him, and we replied that it would be rather hazardous to do so. In the meantime Mr. Goodwyn had consulted his attorney and a meeting was called to consider the matter. Mr. Goodwyn's attorney advised him to go into bankruptcy, and that would settle the whole matter at once. Mr. Goodwyn remarked that he did not like to go into bankruptcy; that as we had been so very clever to him he did not like to take such a step. But we could see at the same time that if something was not done very soon, Mr. Goodwyn's attorney would have persuaded him to go into bankruptcy."

"We then consulted our attorney if it would not be best to let it be settled in the Bankrupt Court, and he replied by no means; that the costs would consume everything, and we would not realize twenty-five cents on the dollar, and if we would settle it in the way proposed by Mr. G., it would be best for all parties. We saw that it was impossible to come to a settlement any other way, and something would have to be done at once to stop the enormous expense that was eating the whole thing up like a cancer. You are aware that he was paying four thousand dollars rent for the house he occupied, and that he had one year to run from the first of October next. Mr. G. then said that if we would draw an agreement to this effect, releasing him from all claims against him and give him four hundred dollars in cash and one hundred and fifty dollars in tools that were in his shop, to enable him to commence business in a small way, he would consent to making the assignment. Our attorney advised us to do so, and the assignment was drawn in duplicate and signed accordingly. As it is now, we think we will get from fifty to sixty cents on the dollar. We also took the responsibility of appointing Mr. Goodwyn our attorney to settle the business, making inquiry at the time of a number of the leading houses in the city if they would advise us to do so, and they replied that we could not get a better man, as he was as honest a man as lived, but had been unfortunate; and when we left there on last Wednesday, the fourteenth instant, he was progressing with the sale of the stock rapidly, and would endeavor to sell the entire stock by the first of October.

"There was a party negotiating for the store when we left, and it is probably rented by this time. We went down with a determination to close it up and stop expenses, and we hope our action will meet your

approbation.  One thing you may rest assured, that we will all fare alike.                              "Yours, truly,

(Signed)                                         BRIDGEFORD & CO."

To the foregoing letter, Perry & Co., the defendants, made the following reply:

"ORIENTAL AND AMERICA STOVE WORKS.

PERRY & CO.,

September 23, 1870, 115 Hudson street, Albany,

250 Water street, New York.

"Messrs. Bridgeford & Co., Louisville, Kentucky:

"Gents—In reply to your favor of the sixteenth instant, respecting our claim v. Mr. G. W. W. Goodwyn, we leave the matter entirely in your hands, feeling confident you will act for us the same as you would for your own interest.  Whatever arrangement you may deem it best to come to will be perfectly satisfactory to us.

"Respectfully yours,

(Signed)                                             PERRY & CO."

It occurs to me, from the foregoing statement, that Bridgeford & Co., in order to get the assignment and secure something for the creditors, assumed to act as agents for Perry & Co.; and acting in good faith they promptly communicated to Perry & Co. all the facts, as well as the reason that induced them to assume the agency.  With full knowledge of all the facts Perry & Co. wrote the letter of twenty-third September, 1870, which I can not construe to mean anything less than a ratification of what had been done in their behalf by Bridgeford & Co.

The moment the ratification occurred, the obligation to discharge Goodwyn of his debts became complete and binding on Perry & Co., and Bridgeford & Co.'s responsibility on account of assuming the agency ceased.

This assent was equivalent to previous authority, and the moment it was given the contract became as complete and irrevocable on Perry & Co. as if they had signed it.  Story on Agency, sections 242, 243, 244, 250, 151.

Now the question is, suppose Perry & Co. had signed the discharge of Goodwyn and accepted the assignment of his property, just as Bridgeford & Co. assumed to do for them, would they be permitted, three weeks afterwards, to withdraw from the contract on the ground that they did not understand the exact situation of their claim; that they did not know that their attorneys had the security of a suspensive appeal bond?

Whose business was it to know the exact situation of Perry & Co.'s case?  It was theirs; and they are presumed to know what their attorneys are doing in their behalf.  It is not pretended that Bridgeford

& Co. knew anything of the security existing in support of Perry & Co.'s claim, and it is not pretended that Goodwyn withheld any information or committed any fraud in going into the transaction.

Suppose Perry & Co. had applied to Goodwyn for the assignment, as was done for them by Bridgeford & Co., would they be heard in demanding the rescission of the contract, to say that they did not know that their claim, the equivalent they had given for the assignment, was as valuable as it was; that it was secured by a suspensive appeal bond? I think not. This was no excuse to Perry & Co. They pressed the assignment on Goodwyn through their agents, or agents whose acts they ratified, and prevailed upon him against the advice of his counsel to make the assignment of his property.

He saw certain relief from his embarrassments in surrendering his property in bankruptcy, and was advised by his counsel at once to do so; but upon the representation of those whose acts have been ratified by Perry & Co., that he would be discharged by his creditors if he would assign to them his property, he was induced to make the assignment.

In my opinion a commutative contract made under the circumstances detailed, ought not to be avoided for the cause set up by Perry & Company.

The relation of Goodwyn to Perry & Company is the same as if they had gone to him in person and procured from him the assignment of his property. As to him there was no error of motive in the contract. Perry & Company contracted for the assignment of his property and he for a discharge of their debt against him.

Now as to the value of that property or the value of the equivalent given by Perry & Company, or their agent, it is immaterial. If it turned out that the goods assigned were worth double the amount of Goodwyn's debt, or that Perry & Company's claim was worth double the amount of the goods, the contract would remain unimpaired. It was no part of Goodwyn's undertaking to inform Perry & Company of the value of their claim or to advise them not to press the contract upon him till they had corresponded with their attorney.

If Perry & Company chose to ratify unconditionally the contract made in their behalf by Bridgeford & Co., and pressed upon Goodwyn, without waiting for the advice of their counsel as to the situation of their claim it was their own fault. It was not the fault of Goodwyn. Besides, if there were a good cause to annul the commutative contract there has been no return nor offer to return the property assigned.

I therefore dissent in this case.