No. 11,541.

THE STATE EX REL. MRS. JOHN MCENERY ET AL. VS. JOHN S. LANIER, REGISTER OF THE STATE LAND OFFICE.

No ministerial duty rests on the Register of the Land Office to issue patents under an asserted contract the enforcement of which is prohibited by a legislative act. Code of Practice, Arts 829, 830; Act of 1888, No. 106; 6 An. 68.

The competency of the Legislature to pass such an act is not affected by the provisions of the Constitutions of the United States and of the State protecting contracts. There is no power to compel a State to perform its contract, and the refusal of the courts to notice and give effect to a legislative act prohibiting the enforcement of such contract would be to enforce it and to coerce the State. See the bond cases, 107 U. S. Reports, 711; 27 An. 430; 33 An. 498; 38 An. 337.

A suit against the Register of the Land Office to compel him to do that which the State has forbidden is in effect a suit against the State, and of such suit the courts have no jurisdiction unless the State consents. See bond cases, 107 U. S. 711; 27 An. 430; 33 An. 498; 38 An. 337.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*Felix P. Poché* and *W. S. Parkerson* for Plaintiffs, Appellees.

*M. J. Cunningham*, Attorney General, for Defendant, Appellant.

*Thomas J. Kernan* of Counsel.

The opinion of the court was delivered by

MILLER, J. This appeal is by the defendant, the Register of the Land Office, from the judgment of the lower court making peremptory the mandamus to divide certain lands claimed to have been recovered by the late John McEnery from the United States, and to issue to relators, his widow and heirs, patents for the moiety claimed by them. The claim is on the contract of deceased with the State, based on the legislative act No. 23 of 1880 for the recovery by him of all lands donated to the State under the swamp land and other

·acts of Congress, his compensation to be fifty per cent. in the lands, ·or the money or the scrip recovered in lieu of the lands claimed.

The defence is: There is no ministerial duty imposed on the de- ·fendant in respect to the subject of controversy; that the legislative ·act of 1880, under which the contract of the late John McEnery was made, has been repealed by the legislative act No. 106 of 1888, and the contract itself abrogated by that act; that the mandamus, if :made peremptory, could not be complied with because the State had ·parted with the lands; and the answer denies that the deceased re- ·covered the lands and urges other defences, unnecessary in our view to be noticed.

The judgment of the lower court made the mandamus peremptory ·to the extent of ordering the register to divide between the State ·and relators a part of the lands claimed, ascertained by the judg- ·ment to be undisposed of by the State, to issue to the relators patents for the moiety, and as to other lands embraced in relators' ·claim, their rights, as well as all rights of the State, arising out of ·past settlements with the deceased under his contract were re- ·served.

On this appeal by the State, the view we take of one question ·controls the decision, and in our opinion precludes the expression of ·any opinion on other phases of this controversy.  The writ of ·man- ·damus issues to enforce only the pure ministerial duty of the public ·official.  Whether any such duty ever was imposed on the register ·in connection with the subject matter of this litigation we have no ·occasion to determine.  This court heretofore made peremptory a mandamus to compel the issue of patents to the late John McEnery ·for the portion of the lands involved in that controversy claimed by ·him under his contract.  It is contended on behalf of the relator that ·decision settled the question here.  The answer in that case sub- :stantially denied that any duty in reference to the issue of the pat- ·ents devolved on the respondent, the Governor and the Register of ·the Land Office, and neither had authority under the act of 1880 to pass on relator's contract or audit his claims; that the only author- ·ity of the executive under the act of 1880 was to make the contract; none was conferred on him to stand in judgment for the State and ·the answer averred he declined to do so and made no admission of ·the relator's claims.  It will be perceived that the defence made no ·reference to the fact that the Legislature had repealed the act of

1880, and, of course, the decision took no notice of that repealing legislation. That legislative act No. 106 is as follows:

" SECTION 1. Be it enacted by the General Assembly of the State of Louisiana, that Act No. 23 of the regular session of the General Assembly of the year 1880, approved March 8, 1880, and entitled ' An act to authorize the Governor of the State of Louisiana to employ counsel to assert the rights of the State to lands donated to the State by the Federal Government or to recover the value of said lands in money or scrip,' be and the same is hereby repealed.

" SEC. 2. Be it further enacted, etc., that the act or agreement made between Louis A. Wiltz, Governor of the State, and John McEnery, made March 20, 1880, purporting to be under the authority of said Act No. 23, is hereby abrogated and terminated.

" SEC. 3. Be it further enacted, etc., that this act shall not take effect until January 1, 1889."

This repealing legislation is pleaded in this case, and it is insisted the suit is virtually against the State in the form of a proceeding against the register to enforce the partition of lands in which the relator claims an interest as owner. There is thus before this court an issue not involved in the previous controversy, and that issue is in our view decisive. The question is whether the State can be coerced by the judgment of this court to comply with an alleged contract, the validity of which it denies, and has declared by a legislative act to be abrogated. If this coercion of the State can be accomplished in its own courts it would seem difficult to reconcile this compulsion with the accepted principle the sovereign enjoys, an immunity from suit.

It will, of course, be conceded that the Legislature has by the plainest implication forbidden any and all recognition by its officials of the alleged contract of the late John McEnery. If any duty, ministerial or otherwise, was ever put on any State official in respect to the contract, it has been withdrawn by this act of 1888. How then can this court hold there is a ministerial duty of the State Register to do that the law has explicitly forbidden? The answer from the relator is that the State could not affect by the act of 1888 the rights acquired under the act and contract of 1880, and we understand by this that the court is to shut its eyes to this act of 1888. But to affirm, the State by its Legislature can not repeal this act of 1880, so as to withdraw any power from its officials in respect to this con-

tract, supposes the State can be controlled by its courts. There is no such compulsory power. The State can never be subjected to judicial control unless it consents to be brought before the courts by direct suit, or by a proceeding against its officials. If the State authorized proceedings against its officials, as it is claimed it did, by this act of 1880, it is simply and only by that permission the proceeding can be sustained. Where the permission is withdrawn from whatever cause, the basis for the proceeding disappears. To say the authority supposed to be conferred by the State through this act of 1880 can not be withdrawn, is in our view practically to deny the immunity of the State from all coercion. The State can do anything it pleases in respect to its contracts and obligations, freed as it is from any coercive power in the court. We therefore hold that as the act of the sovereign we are bound to notice the act of 1888 and give it effect. Under that act not only is there is no ministerial duty on the defendant, but the *mandamus* proposes he shall violate the law.

It is plain, too, that this is essentially a suit against the State. The relators seek to enforce an asserted contract the legislative act declares shall not be recognized. Of course all admit the distinction between a suit against the State, absolutely prohibited unless it consents, and a proceeding to enforce a ministerial duty of the official imposed on him by the State. So long as there stood on the statute book the act of 1880, conceding the effect claimed for it by the relator, this proceeding could not be deemed a suit against the State without its consent. But when that act is repealed, and all recognition of the contract prohibited, then the proceeding to enforce it becomes a suit prosecuted against the State, not only without its consent, but in utter violation of its prohibitive legislation. This conclusion is inevitable, and necessarily fatal to this proceeding, unless on this branch of the case we are again to hold that the State had no power to repeal the act of 1880. We are to adopt the conclusion, it is urged, because that legislation violated the contract right of the late John McEnery, and is hence void under the contract provisions of the Federal and State Constitutions. If this repealing legislation did profess to take away any or all contract rights, still it was the act of the sovereign. The effect of the contract provisions in the organic law is undoubted when applied to individuals. But it is well settled that contracts with States are com-

8

pletely withdrawn from the operation of the provisions of the Federal and State Constitutions securing contract obligations, unless the State consents that its contract shall be submitted for judicial determination. The question in this case is not of legal right or moral obligation. The issue is, has the State consented to be sued? This answer is in the act of 1888, prohibiting the courts from enforcing the asserted contract. To disregard this act and compel performance of the obligation alleged to rest on the State is to apply to the sovereign the same compulsion that courts bring to bear upon individuals. The power to compel the State invoked by the relator does not exist.

Our view of this case finds, we think, abundant support in the decisions of the Supreme Court of the United States, as well as our own Supreme Court made in the litigation involving the rights of the Louisiana bondholder. The question in that litigation was whether the contract of the bondholder could be enforced by judicial proceedings against the State officer. There was in that case the distinct contract of the bond holders that taxes for the interest and principal of the bonds should be levied and faithfully applied. That contract was incorporated in the Constitution of the State by the amendment of 1874. The contract rested upon a basis surely as firm as that on which relator's contract is supposed to rest. His contract is derived from a legislative act. That of the bondholder reposed on a constitutional provision as will as the legislative act. Yet the constitutional convention of 1879, in that part called the Debt Ordinance, to use the language of the court, prohibited the further levy of the bond taxes and forbade the disbursing officer of the State from using the taxes collected to pay the interest falling due in 1880, as well as part of the interest accruing thereafter. The bond case thus showed a plain contract of the bondholder with the State, and as distinct an impairing of that contract by the Constitution of 1879 as can be conceived. Yet the courts, recognizing all this, held that the contract provisions of the organic law protecting contracts had no force to prevent the State of Louisiana from setting aside its contract obligations. The court gave effect to the Debt Ordinance, declaring the State bonds should not be paid, and held in view of that ordinance the courts had no power to coerce that payment. We reach the same conclusion in this case in respect to the relator's contract, and hold under this act of 1888, announcing the will of the

State, that we have no power to disregard that will and coerce the State by process against its officers to do that which the Legislature has declared shall not be done.   Constitutional Amendment of 1874, Act No. 4, p. 42.   The bond cases: Louisiana vs. Jumel, 107 United States Report, p. 711; Macauley vs. Clinton, 27 An. 430; State ex rel. Hart vs. Burke, Treas., et al., 33 An. 498; State ex rel. Guaranty and Indemnity Company vs. Jumel, 38 An. 337.

It is not to be supposed the State will do injustice and close the door of relief to the widow and heirs of the late John McEnery, who claim he rendered valuable services to the State for which compensation is sought in this suit.   We have no views to express as to the claim, holding as we now do there is no jurisdiction in the court to examine or enforce the demand, and it is with reluctance we reach the conclusion the judicial cognizance of relator's suit is excluded as the law now stands.

It is therefore ordered and decreed that the judgment of the lower court be avoid and reversed at relator costs.

Rehearing refused.

MONROE, District Judge, sat in this case.

NICHOLLS, Chief Justice, Associate Justices McENERY and BREAUX recused.