BREAUX, C. J.
This is an action for specific performance.
Plaintiff and defendant entered into a contract, the one to sell and the other to buy certain lands described in the petition.
Plaintiff, who is the vendor, offered a full warranty deed translative of property — a good and merchantable title, as it alleges.
Defendant refused to take title on the ground that the title to 560 acres he bought from plaintiff is not good and merchantable, as it was entered with scrips issued to John McEnery, contractor with the state for the recovery of certain lands.
One of the restrictions in the statute authorizing Gov. Wiltz to enter into a contract with John McEnery was that the state should incur no costs or expenses in the prosecution of claims placed in his charge, except out of land, money, or scrip that John McEnery was employed to recover for account of the state.
It is admitted in effect, for the purpose of the hearing on the exception, that none of the lands in this suit were recovered by John McEnery for the state, but that these 560 acres were lands of the state long before the date of said contract.
Whether the contract made by the Govern- or of the state (Wiltz) with John McEnery, in which it was agreed that John McEnery should be paid in scrip located upon lands owned by the state, although the statute made no reference to other lands than those recovered, was ultra vires and void, presents the question at issue. It is at once apparent, from reading the statute and afterward reading the contract, purporting to have been made under the terms of the statute, that there is some difference between the statute on the one hand and the contract on the other.
In the act before referred to with the Governor it is provided that where lands in kind are recovered the .compensation of the contractor shall be 50 per cent, whether scrip or certificates to be issued by the register of the land office and locatable upon any land owned by the state. Locatable upon any land owned by the state is not in the statute.
The grounds of plaintiff are: That it is an “innocent” purchaser, and protected by estoppel, and that, in consequence, its title is good and merchantable.
We can state in answer: It may be that it is an “innocent” purchaser, although it does not appear that its author inquired into the *718 origin of the title or made search among the records of the state land office.
. But, granted that plaintiff is an innocent purchaser, none the less we do not think that we should order the defendant to accept title, for reasons that we will state later.
The second ground is the plea of estoppel.
That plea is frequently technical, and admits of considerable discussion. It is not a favored plea generally.
We will state generally, before specially taking up the two pleas, innocent purchaser and estoppel, for decision, that the averment of the defendant is that Gov. Wiltz has acted beyond his authority — a very serious plea, if sustained.
But it may be that the state, through its lawmaking power, has chosen to ratify the act.
In order to briefly set out the status of the title, we have gone back to the case that the plaintiff cites in the first place; that is, State ex rel. v. Nicholls, Governor, 42 La. Ann. 209, 7 South. 738.
No question but that the court did in part uphold the validity of the contract of March 20, 1880, entered into between Gov. Wiltz and John McEnery, but only in part, and that part is not pertinent to the issues in the case before us for decision.
The act in question is referred to in the cited case as giving a right of compensation to the contractor for lands he would recover. • To quote from the decision:
“In so far as the right of relator to a part of the internal improvement lands recovered.”
Again, in the just cited case:
“There is complete proof in the record. It consists in an admission that the lands described in the advertisement embraced the school indemnity lands and the internal improvement lands recovered.”
We have found no reference in this decision to any other lands than those actually recovered.
We only refer to this particular phase of the decision. As to other points, they are not before us for consideration. We have no inclination to consider them, but in thus stating we do not wish to have it understood or implied in any way that the decision cited is not correct, for we have every respect for precedents and wish to avoid changing or weakening decisions, except for the best of reasons.
We therefore pass beyond the other points of the decision, as not pertinent here.
We bring our reference to this decision to a close by restating:
The decision in question did not establish the validity of the contract in question as relates to other lands than those recovered.
Plaintiff can find no support in State ex rel. McEnery v. Register, 47 La. Ann. 110, 16 South. 647. The mandamus applied for in that case was refused. The decision recognizing the binding effect of Act No. 106, p. 171, of 1888, abrogating and terminating the contract of March 20, 1880, between Gov. Wiltz and John McEnery.
Plaintiff also cited Smith v. Crandell, 118 La. 1052, 42 South. 699.
Here, again, the plaintiff is not fortunate, for the question was not directly passed upon. The only question decided was whether the plaintiff in that case could ignore absolutely as void the rights claimed under the scrip, and this without suit against or notice to parties who claimed as owners of the land.
It would have led to confusion if parties were permitted to thus set aside claims acted upon and to which recognition has been given erroneously or correctly by the land department of the government.
In the Frellsen Case, 120 La. 558, 45 South. 558, again relating to similar scrip, the court was careful to state on rehearing, referring to 42 La. Ann. 209, 7 South. 738, that it dealt only with lands actually recovered by John McEnery under his contract with Gov. Wiltz.
*720 And the court went further, and held that which had been decided in the previous decision, referred to above — that there is no precedent for setting aside asserted titles by those who claim to have acquired subsequent rights in an action in which parties in interest were not parties to the litigation.
The validity of the right claimed in the Erellsen Case was not passed upon. It was left open for consideration, if brought up by indispensable parties in interest.
In reference to this decision (in Erellsen Case), it is a fact of which we take notice that a writ of error was applied for, a preliminary order was granted, and the case is now before the federal Supreme Court for decision.
In view of that fact, not only the title is suggestive of litigation, but it is involved iu litigation, for the case relates strictly to scrip such as now before us.
To this point we have reviewed the decisions of this court. We have also referred to Act No. 23, p. 25, of 1880 and the contract thereunder.
There is another statute which was cited by plaintiff; that is,'section 8, Act No. 75, p. 87, approved April 7, 1880, an act adopted the same session as Act No. 23, p. 25, before referred to.
The following is a copy of the section:
“That persons holding legally issued, outstanding, unlocated school interest improvement land or other state warrant shall have the right hereafter to locate said warrant on any lands belonging to the state.” Wolff’s Rev. Laws 1904, p. 1349, § 8.
Plaintiff claims that the scrip under which the land was entered is legal, because it was so decided in 42 La. Ann. 209, 7 South. 738.
We have already disposed of that contention by deciding that it is error. The decision did not hold that the contractor was entitled to compensation for lands not recovered.
Plaintiff in the next place invites our attention to Act No. 106, p. 171, of 1888 (to which we have already referred), repealing the contract of March 20, 1880, as recognizing and ratifying said contract as an existing obligation, because it fixed a short time in the future when it should terminate.
The contention of plaintiff is that the effect of this repealing statute was an intimation that the contract was not illegal and not ultra vires.
We do not think that that position would justify us in maintaining the title. That question does not seem to have been considered by the legislative mind from that point of view.
Besides, the position is based only on the inferential.
We said at the opening of the discussion that we would decide the plea of “innocent purchaser,” pleaded by plaintiff, later. After further consideration we have arrived at the conclusion that, in view of the laws and the decisions cited above, however innocent plaintiff may be, it cannot transfer a complete title at this time.
This brings us to a consideration of the question of estoppel, in regard to which plaintiff’s contention is that under the facts of this case the state of Louisiana is estopped from asserting any title contradictory to its own patents issued many years ago.
The question of estoppel of the state presents interesting issues. Heretofore, upon certain facts shown, the court held that estoppel applied to the state. State v. Railroad Company, 44 La. Ann. 981, 11 South. 865; Mower v. Kemp, 42 La. Ann. 1007, 8 South. 830; Railroad Company v. Sledge, 41 La. Ann. 896, 6 South. 725 ; Folger v. Palmer, 35 La. Ann. 744; State v. Taylor, 28 La. Ann. 460; State v. Ober, 34 La. Ann. 359.
The federal Supreme Court in Jones v. Simpson, 116 U. S. 609, 6 Sup. Ct. 538, 29 L. Ed. 742, in United States v. Detroit Lumber Company, 200 U. S. 321, 26 Sup. Ct. 282, 50 L. Ed. 499, and in U. S. v. Clark, 200 U. S. 601, 26 Sup. Ct. 340, 50 L. Ed. 613, has gone *722 far toward maintaining the validity of patents.
Whether the present case falls within the grasp of those decisions is yet to be decided.
We have collated citation of authorities as above only for convenience of reference, for in all probability the question will again come up when proper parties will be before the court. With what effect, as relates to estoppel, will have to be determined hereafter.
It may suggest itself, why not finally dispose of the matter at this time?
The ready answer is that it cannot be finally decided, even if we were inclined to hold that proper parties are before the court. Another tribunal having jurisdiction will pass upon the issues. The result, or final decision, is necessarily unknown.
We must decline to decree that the defendant shall accept the title as tendered. Our decisions heretofore have been conservative in regard to titles tendered for acceptance. We think we are justified in following the rule heretofore laid, down in such cases, and that one should not be made to accept a title tendered as good, valid, and binding unless it is entirely legal from every point of view.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is annulled, reversed, and avoided.
It is further ordered, adjudged, and decreed that plaintiff’s suit is dismissed, at its costs in both courts.