## PRICE v. LOUISIANA RURAL REHABILITATION CORPORATION.

### No. 2783.

District Court, W. D. Louisiana, Monroe Division.

April 11, 1941.

G. P. Bullis, of Ferriday, La., for plaintiff.

Jesse C. McGee, of Harrisonburg, La., and S. R. Holstein, of Winnsboro, La., for defendant.

PORTERIE, District Judge.

The land, the lease of which by its supposed owner, Mr. J. O. B. Price, to the Louisiana Rural Rehabilitation Corporation for a period of two years being the subject of this suit, was adjudicated to the state for the year 1932 on the 14th day of December, 1933. Mr. Price had already involved the title of his land when, in bankruptcy proceedings filed on October 31, 1933, In the Matter of J. O. B. Price, Debtor, No. 5144 in Bankruptcy, the land became an asset of the bankrupt debtor seeking a composition or extension of time within which to pay his debts.

The next involvement of the property occurred when Mr. Price, in writing, on December 21, 1934, leased the O. K. Plantation, as the land was locally called, to Mr. J. R. Belgarde, for the period of two years, 1935 and 1936. With the title of this property affected by these three transactions, Mr. Price then became the lessor and the Louisiana Rehabilitation Corporation the lessee of O. K. Plantation "for the term beginning January 1, 1936 and ending with December 31, 1937," for a total price of $4,852, with numerous provisions, the following two being the ones of greater import and of necessary need of interpretation in this suit: "The Lessor also agrees that in addition to the four (4) cabins located on the said premises, he will construct sixteen (16) new three (3) room shot-gun type houses on said premises, ten (10) of said houses to be completed and ready for occupancy on or before March 20, 1936, and the remaining six (6) on or before April 1, 1936;" * * * "The Lessor warrants that the Corporation shall have quiet enjoyment of the lands herein leased and further warrants that he (the Lessor) has an absolute and indefeasible title to said lands and that he will, during the term hereof, defend the same and hold the Corporation harmless against the lawful claims of any and all persons whomsoever."

The story then is, as the record runs, that on March 16, 1936, Mr. E. C. McInnis of New Orleans, authorized head and representative of the Corporation for Louisiana, wired Mr. Price: "We are today signing lease contract your OK plantation proceed with construction of houses in accordance with its terms", followed by letter of same date giving information more in detail as to extension of time to build houses.

Mr. Price built the houses; he borrowed enough money to build the houses and to take care of delinquent taxes, as was made known by letter of the money-lending bank to the Corporation, dated February 14, 1936.

But what happened to Belgarde, whose second year of lease from Price was the first year in the lease from Price to the Corporation, in his relations to the land? It is shown that by letter of November 3, 1935, Price wrote to Belgarde that because of numerous violations of the provisions of their lease, he was through with him (Belgarde). Mr. Belgarde must have heard of Mr. Price's lease with the Corporation, because on March 2, 1936, he wrote to Mr. Price, as follows: "I understand from a reliable source that you are planning to rent to the Resettlement Corp. the O. K. property for a period of 3 years, this year included. This is to advise that I fully expect to perform my lease with you this year under our contract of Dec. 21, 1934 which was for a period of 2 years thereafter. Plans to till the property are going forward from this date. You will find that our contract of lease is filed in Catahoula Parish records, conveyance book 42, 2–11–36. Wish also to state that I will maintain possession of this property this year unless satisfactory compensation is made to all parties concerned."

From the language of this letter the court is led to believe that Belgarde had accepted the previous notice of Mr. Price to be off the property for the year 1936. The letter tends to show that Belgarde had considered the contract canceled by the notice had through the Price letter, because he asserts his right as if new, closing the letter with the indication that "satisfactory compensation" would have to be made—not to mention the fact that his written lease had just been placed of record by him, though in the second year of its life.

To this letter of Belgarde, Mr. Price, by registered mail, replied on March 18, 1936, reviewing the reasons of his letter of the year before but giving many more reasons in detail for a cancellation of the contract.

Belgarde's hopes for compensation must have been bright, for on April 1, 1936, he wired to the Corporation at New Orleans, as follows: "I have today released all my claims against OK Plantation and you can get possession immediately." But we are not through with Belgarde's vacillations, for a letter of the same date as the telegram contains conditions, as are shown by quoting the full letter. "Rural Resettlement Ad., New Orleans, La. Attn. Mr. McInnis. Gentlemen: This will confirm my telegram to you of Mar. 31, releasing to the administration my lease on O. K. property. Wish to make it clear that I will release this property to you provided that Mr. Price comes up to his agreement with me, and that the tenants on the property at present be taken care of. It is distinctly understood that I do not release my claim on this property if the Rural Resettlement Administration does not accept this property."

At this time the Corporation decided not to continue with the written contract entered into with Mr. Price; all the houses were completed; most of the tenants remained on the premises.

The Corporation "has completely failed, neglected and refused to comply with or perform any of its obligations under the said lease, and particularly has failed, neglected and refused to take possession of said plantation," to quote from plaintiff's petition, and prayer is for judgment in the full sum of the rent obligation of $4,852, with interest and costs.

The defenses by the corporation are three-fold:

"1. That at the time of the contract between plaintiff, Price, and your defendant, there was in existence a written lease, by and between the plaintiff, J. O. B. Price, and one Belgarde; that the plaintiff, J. O. B. Price, concealed this fact from your defendant; that your defendant only learned of this outstanding contract of lease when he attempted to take possession of the leased premises.

"2. Defendant further states that plaintiff's demand should be rejected for the reason that at the time of defendant's con-

tract with plaintiff, that the title to the property in question was vested in the State of Louisiana.

"3. The plaintiff's demand should be rejected for the reason that at the time of the execution of the contract, between defendant and plaintiff, that the property in question was under the jurisdiction of the Federal Bankruptcy Act, Section 75, 11 U.S.C.A. § 203, and that plaintiff was without right to lease or attempt to lease the said' property to your defendant without first having obtained a consent and approval of the conciliation commissioner and the Federal Court."

After study, and making use of the references and authorities in the briefs, the court has become so impressed with the strength and legal validity of the third defense that it finds it unnecessary to rule upon the first two defenses.

Price is faced with the question under the law as to his authority to have appeared on the first day of January, 1936, and disposed of O. K. Plantation in a lease of two years when, since October 31, 1933, as a debtor in bankruptcy, he had most solemnly and judicially declared this particular property an asset in a petition seeking a composition or extension of time within which to pay his debts.

We grant that title to the property had remained in the debtor under this type of bankruptcy petition, differently to what would have been the case had the petition been one in actual insolvent bankruptcy where the final purpose is a full discharge from debt. However, we must examine the federal bankruptcy statute and the jurisprudence thereunder as to how far Mr. Price was denied sole and individual action as to his property, and how much control of his property was in the court, though the title, naked, remained in him.

Mr. Price appears simply and by himself in signing the record. We have examined the full record in No. 5144 in Bankruptcy, J. O. B. Price, and find no application to and no consideration by the conciliation commissioner therein of any lease of the O. K. Plantation. The powers and duties of a conciliation commissioner are, in general, those of a referee in bankruptcy. General Orders in Bankruptcy, Order L, par. 11, 288 U.S. 644, 53 S.Ct. xxxviii, 11 U.S.C.A. following section 53. Paragraph 11 of Order L provides: "In so far as is consistent with the provisions of section 75 [11 U.S.C.A. § 203] and of this general order, the conciliation commissioner shall have all the powers and duties of a referee in bankruptcy and the general orders in bankruptcy shall apply to proceedings under said section. * * *"

See Bank of America Nat. Trust & Sav. Ass'n v. Adair, 9 Cir., 90 F.2d 750.

Subsection n of Section 75, as amended by the new Frazier-Lemke Act, August 28, 1935, c. 792, §§ 1–6, 49 Stat. 942–945, 11 U.S.C.A. § 203 subs. b, g, k, n, p, s, is conclusive of the utter legal inability of Mr. Price to have entered this lease contract. To make this clear we should quote the provision of the statute, 11 U.S.C.A. § 203: "(n) The filing of a petition or answer with the clerk of court, or leaving it with the conciliation commissioner for the purpose of forwarding same to the clerk of court, praying for relief under this section, shall immediately subject the farmer and all his property, wherever located, for all the purposes of this section, to the exclusive jurisdiction of the court, including all real or personal property, or any equity or right in any such property, including, among others, contracts for purchase, contracts for deed, or conditional sales contracts, the · right or the equity of redemption where the period of redemption has not or had not expired, or where a deed of trust has been given as security, or where the sale has not or had not been confirmed, or where deed had not been delivered, at the time of filing the petition. * * *"

We note the concluding part of the next paragraph: " * * * In proceedings under this section, except as otherwise provided herein, the jurisdiction and powers of the courts, the title, powers, and duties of its officers, the duties of the farmer, and the rights and liabilities of creditors, and of all persons with respect to the property of the farmer and the jurisdiction of the appellate courts, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's petition, asking to be adjudged a bankrupt, was filed with the clerk of court or left with the conciliation commissioner for the purpose of forwarding same to the clerk of court."

No citation of authority need be given to the effect that the debtor-petitioner in a voluntary petition for bankruptcy

following a decree of adjudication is absolutely without power to alienate any of his property.

In the case of In re Wiedmer, 7 Cir., 82 F.2d 566, a debtor under Bankruptcy Act, Section 75, as amended, 11 U.S.C.A. § 203, took it upon himself to carry some of his movable assets away from his farm to some adjoining property without permission of the conciliation commissioner, and more, we must admit, in violation of the commissioner's order, and the Circuit Court of Appeals upheld the finding of the District Court of the United States wherein the debtor and his adviser had both been declared in contempt and the latter given a jail sentence of several months. It follows obviously that Mr. Price, in the same status—a debtor under Section 203—could not be vested with the legal authority to enter into a lease of O. K. Plantation, one of his assets, without authority from the United States District Court, which usually would follow upon the recommendation of the conciliation commissioner, premised upon some exercise of discretion, likely based on a hearing with notice to all creditors. In re Shyvers, D.C., 33 F.Supp. 643.

As much as the court might appreciate the good faith of Mr. Price in entering this lease, and that the money to be received would have been applied to the satisfaction of his debts, and also as much as the court realizes that he spent time and money in good faith in the building of the sixteen tenant houses on the property, we cannot circumvent the absolute requirement of the law in such a case.

An examination of the proceedings in the bankruptcy record shows that the District Court, after hearing, through judgment, stayed a sale of Mr. Price's property already made by the sheriff upon a foreclosure. Price sought the power of the court then to protect him in his property, and it follows that he should have known that he could not sell for a period of years as in a lease without the knowledge and authority of the conciliation commissioner and the court. This requirement is to assure that the proceeds of all transactions will be delivered to and placed in the custody of the court. The property, as is so aptly said in the decisions, was in custodia legis.

To prove constructive, if not actual, notice in Mr. Price, in his petition for the temporary restraining order staying the sale, just discussed, one of the paragraphs is that "Petitioner represents that [at] the present stage of said proceeding for extension of time this Court has assumed and now exercises exclusive jurisdiction over all property of petitioner." Though this petition is prepared by the then attorney of Mr. Price, the affidavit, nevertheless, "that the matters and facts set forth therein are true and correct to the best of his knowledge and belief," is signed by Mr. Price. A closer examination of the bankruptcy proceeding discloses that the report to the court by the conciliation commissioner on November 14, 1935, in which is recommended "that the sale attacked in this rule should be set aside and the property restored to the estate of the debtor", is supported by the following conclusion: "under the clear language of Section 75, subsections n, o and p, the Bankruptcy Court has exclusive jurisdiction over all property of the debtor and any foreclosure instituted prior or after the filing of the petition is expressly prohibited."

The headnote writers of the U. S. Code Annotated have condensed the legal significance of the ruling by the United States District Court relative to this protection accorded Mr. Price at Note 78, 11 U.S. C.A. following section 203, in the following language: "Where property and debtor were under exclusive jurisdiction of federal court in extension and composition proceedings, mortgage foreclosure proceedings and sale could not be conducted in state court without federal court's authority, notwithstanding original injunction against sale was limited to specific period. In re Price (D.C.La.1936) 16 F. Supp. 836."

Mr. Price is both an educated and an intelligent man, and we must assume that when he signed the lease with the Corporation he is bound to have realized that he was without authority to do so; that the conciliation commissioner only, with the authority of the court, could execute such a deed. Why he did not get such authority, when it would probably have been but perfunctory to have secured it —as a lease was to the benefit of creditors —we cannot explain.

We agree with the holdings of the various well-selected citations of counsel for plaintiff, namely: Rector v. Gibbon, 111 U.S. 276, 4 S.Ct. 605, 28 L.Ed. 427; Davidson v. Fletcher, 130 La. 668, 58 So. 504;

Dennistoun v. Walton, 8 Rob., La., 211; Jackson v. Muse, La.App., 190 So. 162; all supporting the fundamental rule of law, federal and state, that a lessee cannot question the title of his lessor, once the lessee has entered into possession. This factual differentiation must be made, however: all the cases cited by counsel for Mr. Price as well as all those that are named within them show that the lessee had entered into possession, contrarily to the facts of the instant case where the lessee never did make entry. To support this vital difference by analogy, we refer to cases wherein deeds to real estate are concerned instead of leases of real estate, and the quotations are:

" * * * The decree of the lower court was in accordance with the recognized principle in our jurisprudence that the defendant cannot be compelled to accept a title that carries with it a threatened litigation or disturbance. The decree therefore * * * released him from his bid on properties adjudicated to him where the ownership of the same was claimed by other parties and involved in litigation; * * * ." Michener v. Reinach, 49 La.Ann. 360, 21 So. 552, 554.

"We must decline to decree that the defendant shall accept the title as tendered. * * * We think we are justified in following the rule heretofore laid down in such cases, and that one should not be made to accept a title tendered as good, valid, and binding unless it is entirely legal from every point of view." Bodcaw Lumber Co. v. White, 121 La. 715, 46 So. 782, 784.

In the aforequoted second paragraph of the contract, the lessor says that "he has an absolute and indefeasible title to said lands." Assuming the most generous position towards the lessor and saying that he was in good faith and innocent in this representation, we nevertheless find that "An innocent misrepresentation on which one rightly relies may invalidate a contract where it relates to a material matter." 17 C.J.S., Contracts, § 147, p. 502; Goodwyn v. Perry & Co., 25 La.Ann. 292. And the defendant avails itself of this legal principle.

Moreover, we are dealing here with the provisions of a transcendent federal statute. Article I, Section 8, Clause 4, Constitution of the United States. There have been decades of use of the federal statutes of bankruptcy, and all laymen with any degree of business experience, not to mention the lawyers, well know that the last person who might exercise disposition over property placed in the custody of the federal court through bankruptcy is the debtor himself. There was a total want of legal capacity in Mr. Price to contract.

The lease contract was void ab initio, and though the representatives of the Louisiana Rehabilitation Corporation may have known nothing of this difficulty at the time of entry into the lease contract, they are not estopped from using it as a defense.

Accordingly, the case of plaintiff must be dismissed at his cost, and judgment will be signed accordingly.