## JONES & Another *v.* SIMPSON.

## SAME *v.* HOISINGTON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

Submitted December 10, 1885.—Decided February 1, 1886.

A sale of personal property made by the vendor with intent to defraud his creditors, but for valuable consideration paid to him by the vendee, followed by actual and continued change of possession, is valid against the vendor's creditors, unless it also appears that the vendee acted in bad faith. This rule prevails in Kansas.

In the trial of an action by the vendee of personal property against an officer seizing it on a writ of attachment issued at the suit of a creditor of the vendor to recover damages for the seizure, declarations of the vendor made after delivery of the property to the vendee, but on the same day and fairly

forming part of the *res gestæ*, are admissible to show intent to defraud the vendor's creditors by the sale, if it is also shown by independent evidence that the vendee shared the intent to defraud with the vendor.

When at the trial of such an action it is proved that the vendor made the sale with fraudulent intent to hinder and delay his creditors, the burden is thrown upon the vendee to prove payment of a sufficient consideration; but this being established, the burden is then upon the creditors attacking the sale to show bad faith in the vendee.

The facts which make the case are stated in the opinion of the court.

*Mr. J. G. Mohler* for plaintiffs in error.

*Mr. Reginald Fendall* for defendants in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

These actions—one against the United States marshal for the District of Kansas, and the other against the sheriff of one of the counties of that State—were brought to recover damages for an alleged wrongful seizure and conversion, by those officers, of certain goods and chattels which plaintiffs in error, who were plaintiffs below, claimed to have purchased, prior to such seizure, from G. & M. Goldsmith. The seizure, in each case, was made in virtue of attachments sued out by creditors of said vendors. The defence is, that the property was liable to seizure as the property of the defendants in the attachments. Whether it was so liable depends upon the inquiry whether the sale to the plaintiffs passed a good title as against the creditors of the vendors. The defendants insist that it was made with the fraudulent purpose, on the part of the vendors, of cheating, hindering, and delaying their creditors, and that the vendees either intended by their purchase to aid in accomplishing that result, or, at and before their purchase, were chargeable in law with notice of the fraud designed by the vendors.

It is unnecessary to set out all the facts which, according to the bill of exceptions, the evidence tended to establish. For the purpose of indicating the grounds upon which the case will be determined, it need only be said that while there was

evidence tending to show the payment by plaintiffs of the fair value of the property, its actual delivery to them at the time of the sale, and their continued possession of it until seized under these attachments, there was, also, evidence tending to prove that the circumstances attending the transaction were so unusual and suspicious as to suggest to business men, of ordinary prudence, the purpose of the vendors to hinder or defraud their creditors. And from all the facts the jury might reasonably have concluded that the plaintiffs were willing, by purchasing the property, to aid the vendors in defeating any efforts of their creditors, by the ordinary process of the law, to obtain satisfaction of their demands. The correctness of this interpretation of the conduct of the parties to the sale is sustained by the admissions and declarations of the vendors, made so nearly contemporaneous with the delivery of the property that they may be said to have sprung out of the very transaction in virtue of which the plaintiffs claim title.

It is, however, contended that the admissions of the vendors, after the sale and delivery of the property, not in the presence of the vendees, were not competent evidence against the latter. We had occasion, at the present term, in *Winchester & Partridge Manufacturing Co.* v. *Creary, ante,* 161, to consider this question in a somewhat different aspect. In holding in that case that the court erred in admitting the declarations of a vendor in evidence against the vendee of personal property, which had been delivered before any suit by attaching creditors, it was said: "After the sale, their [the vendors'] interest in the property was gone. Having become strangers to the title their admissions are no more binding on the vendee than the admissions of others. It is against all principle that their declarations, made after they had parted with the title and surrendered possession, should be allowed to destroy the title of their vendee." But it was also said that such admissions or declarations would be competent against the vendee, if it were shown by independent evidence that the vendor and vendee were engaged in a common purpose to defraud the creditors of the vendor, and the admissions had such relation to the execution of such purpose as fairly to constitute a part of the *res gestæ*.

These conditions seem to be fully met in the present case; for the facts which the evidence tended to establish, apart from the admissions and declarations of the vendors, indicate collusion between them and their vendees for the purpose of delaying the creditors of the former, and that such admissions and declarations, though not precisely concurrent in time with the sale, were made in the course of the same day, and were plainly in furtherance of the common design to delay the creditors of the vendors. Upon these grounds we think that those admissions and declarations of the vendors were admissible against the plaintiffs. There were other objections by plaintiffs to the admission of evidence, but they need not be specially noticed.

At the trial the plaintiffs asked the court to instruct the jury, that if they believed from the evidence "that the goods in controversy were sold and delivered to Jones & Weil before any attachment was made or issued, that they took possession of the goods after the sale, that the change of possession was actual and visible, such a change as to indicate to persons who had previously done business at the store where the goods were that Max S. & Gus. Goldsmith had no longer possession or control of the goods, that the sale was for an approximate price, and for a valuable consideration paid by plaintiffs to Goldsmiths, the jury will find for the plaintiffs." This instruction was properly refused; for, the facts stated in it did not entitle the plaintiffs to a verdict, if the evidence showed either that their purchase was not in good faith, or was made with knowledge at the time of such facts and circumstances as reasonably put them upon inquiry as to the purpose of the vendors to hinder and delay their creditors. And the same criticism may be made upon the instruction asked by the plaintiffs to the effect that, "if Goldsmith had purchased the goods on time, and those debts were not due for the goods, the goods were the absolute property of the Goldsmiths, and they had a lawful right to sell and dispose of any and all of the goods in their possession without any regard to their creditors; and if they did so sell the goods to Jones & Weil before their debts were due, and plaintiffs took possession of them, the title of the goods passed to Jones & Weil, and they were not, after such sale

and delivery, liable to attachment for the debts of Goldsmith, and, if so attached, Jones & Weil could either replevy the goods or treat such seizure as a sale and sue for the value of the goods."

The record contains numerous instructions given to the jury, at the request of the defendants, and to the granting of which the plaintiffs excepted. We perceive no defect in any of them except the last one, which is in these words: " If the jury believe that Gus. and Max S. Goldsmith sold the goods to the plaintiffs, with the intention to hinder, delay, or defraud their creditors, then the plaintiffs, before they can recover, must show, by a preponderance of the evidence, that they bought the goods, for a good and valuable consideration, and that they acted in good faith in making said purchase. It is not sufficient that they paid a valuable consideration, even should you find that to be a fact. If plaintiff did not act in good faith in making the purchase, it is void, although they paid a full consideration."

This instruction was clearly erroneous. It is unwarranted either by the laws of Kansas or by the principles of the common law. By the second section of the statute of Kansas for the prevention of frauds and perjuries, it is provided that " every gift, grant, or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment or execution made or obtained with intent to hinder, delay or defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the person or persons who shall purchase such lands, tenements, hereditaments, rents, goods or chattels, shall be deemed utterly void and of no effect." And by the third section of the same act it is further provided, that " every sale or conveyance of personal property, unaccompanied by an actual and continued change of possession, shall be deemed void, as against purchasers without notice, and existing or subsequent creditors, until it is shown that such sale was made in good faith and upon a sufficient consideration." Act of October 31, 1868, 1 Dassler's Kansas Stat., ch. 43, p. 441; Compiled Laws of Kansas, 1879, ch. 43. If the second section embraces such a sale of goods and chattels as the one here involved, it

is not to be supposed that the legislature intended, in every case, to deprive the vendee of personal property, who buys in good faith and for a valuable consideration, of the benefit of his purchase simply because the vendor sold with the intent to hinder, delay, or defraud his creditors; for, the third section protects such a purchaser, even where there has not been an actual and continued change of possession, upon his showing that he bought in good faith and upon sufficient consideration. The necessary implication from the language of that section is that where the sale is followed by an actual and continued change of possession the vendee is not obliged, in order to maintain his right of possession, to prove both the payment of a sufficient consideration and the exercise of good faith upon his part. His title, where such possession is shown, will be protected, unless it is successfully impeached by some one who has the right to question its validity. The party who asserts that the title did not pass as against him must make such proof as will establish that proposition. If he does not, the presumption which the law indulges that the vendee has rightfully acquired possession will control the determination of the issue. Upon its appearing that the vendor—possession having been delivered—made the sale with the fraudulent intent to hinder or delay his creditors, the utmost which the creditors could claim is that the burden of proof is upon the vendee, as between him and existing creditors, to show, by competent proof, that he paid a sufficient consideration for the property. But such payment being shown, the vendee is entitled to a verdict and judgment,—however fraudulent may have been the intent of the vendor—unless it appears affirmatively, from all the circumstances, that he purchased in bad faith. And such bad faith may exist where the vendee purchases with knowledge of the fraudulent intent of the vendor, or under such circumstances as should put him on inquiry as to the object for which the vendor sells.

There can be no doubt that these principles are in accordance with the settled course of decision in the highest court of Kansas. In the recent case of *Baughman, Sheriff*, v. *Penn*, 6 Pacific Reporter, 890, which was an action of replevin to recover personal property, which had been seized as the property

of Howard Bros., who were defendants in certain attachment suits, but which property the plaintiffs in those suits claimed to have purchased from the debtors prior to the attachments being issued, that court said : " A further objection is made to the direction given by the court, 'that fraud is never presumed, but must be established by evidence.' Of the correctness of this proposition, or of its application to the case, there should be no question; but counsel seemed to argue that the burden of proof was upon the plaintiff to show that he did not participate in the fraud now conceded to have been intended by the Howard Bros. Fraud is not so lightly imputed. While certain circumstances will give rise to an inference of fraud, yet the law never presumes it. It devolves on him who alleges fraud to show the same by satisfactory proof. And the burden rested upon the creditors of Howard Bros., who assailed the good faith of Penn in this transaction, to show, by either direct or circumstantial evidence, that the transaction was fraudulent as to Penn. As the trial court stated, 'the law presumes, in the absence of evidence to the contrary, that the business transactions of every man are done in good faith and for an honest purpose; and any one who alleges that such acts are done in bad faith, or for a dishonest and fraudulent purpose, takes upon himself the business of showing the same.' " See also *Wilson* v. *Fuller*, 9 Kansas, 176, 187; *Diefendorf* v. *Oliver*, 8 Kansas, 297; *Wolfley* v. *Rising*, 8 Kansas, 297; *Prewit* v. *Wilson*, 103 U. S. 22, 24; *Stewart* v. *Thomas*, 15 Gray, 171; *Elliott* v. *Stoddard*, 98 Mass. 145; *Hatch* v. *Bayley*, 12 Cush. 27, 30; *Cooke* v. *Cooke*, 43 Maryland 522, 533.

There was, as we have seen, evidence tending to show that plaintiffs paid a sufficient consideration for the property, and that there was such a change of possession as is required by the statute. And as the jury were erroneously instructed that they must find for the defendants, unless the plaintiffs showed, by a preponderance of evidence, both the payment of a good and valuable consideration and good faith in the transaction,

*The judgments must, for that error, be reversed, and the cases remanded for a new trial.*