CORWINE et al. v. THOMPSON NAT. BANK OF PUTNAM et al.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1900.)

No. 797.

1. FRAUDULENT CONVEYANCES—DEED TO CHILDREN—VALIDITY.

Deeds executed by one who was largely indebted as indorser of notes of a corporation in which he was a stockholder, conveying property to his children, for a consideration which was not inadequate, and which was fully paid by taking up such of the obligations upon which the father was indorser as he directed, are not fraudulent as to other creditors of the grantor, where preferences were permitted by the laws of the state, nor are they rendered fraudulent by the fact that after their delivery they were withheld from record, by one to whom they were intrusted to be recorded, in the interests of the corporation, to enable it to secure renewals of other notes or new loans on the credit of the grantor as indorser, where such withholding was not in pursuance of any agreement between the parties, and was without the direction or knowledge of the grantees.

2. SAME—WITHHOLDING DEED FROM RECORD—FRAUDULENT ACTS OF AGENT.

A grantee of land conveyed to her by her father for an adequate consideration authorized her husband to act for her in the transaction. The father was an indorser in a large amount for an insolvent corporation in which both he and the grantee's husband were interested. The conveyance, together with others made at the same time to other children, included practically all the grantor's property, and the consideration received therefor was applied in payment of certain of the notes on which he was liable. After the delivery of the deeds they were intrusted to a third person to be recorded, but at the instance of the grantee's husband he withheld them from record for several months, during which time the husband, by concealing the fact of the conveyances from the creditors of the corporation, secured further renewals of its notes, as well as new loans upon the indorsement of the grantor. Held that, as against those who were so induced to renew their notes or to make loans on the faith of the indorser's solvency, such grantee was estopped by the acts of her agent to claim title to the property, and as to such creditors the deed to her was void.

3. SAME—UNDIVIDED INTEREST IN LANDS—IMPROVEMENTS MADE BY CO-TENANT.

Where a daughter, who owned an undivided three-fourths interest in certain lands, the other one-fourth being owned by her father, had made valuable improvements on such lands, and a conveyance to her by her father of his one-fourth interest was held void as against his creditors, she is entitled to an allowance for the enhanced value of such interest by reason of her improvements.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

Previous to March 12, 1894, John W. Corwine was the owner of an undivided one-fourth interest in certain tracts of valuable land in Pike and Ross counties, Ohio, all of which together contained about 4,000 acres. The other undivided three-fourths were owned, one-fourth by his wife, and two-fourths by his children, in fee. Some years before the date named he had become actively concerned and largely interested in the National Cotton Seed Oil & Huller Company, a corporation whose nominal capital was $1,000,000. Its plant was located at Memphis, Tenn., but most of its financial concerns were conducted, or at least attended to, in the vicinity of Pike county, Ohio; Corwine being active in its affairs, and his son-in-law, John W. Barger, being one of its directors, its secretary, and the chairman of its financial committee. The company had been a very large borrower of money, and some of its stockholders, including Corwine, had become involved as sureties therefor, to the extent of quite $200,000, which was unpaid in March, 1894. In the prog-

ress of these affairs, and as an inducement to the negotiation of the loans and the renewal of the notes given for the money borrowed, Corwine had placed in the hands of Barger, and through him in the hands of certain brokers and loan agents, a statement of his financial condition, showing in the earlier one that he was worth probably as much as $150,000, and in the last one that he was worth $100,000. Others of the sureties on the paper had pursued the same course. The statement of Corwine was renewed from time to time, the last one being dated November 8, 1893. C. N. Lindley was, in most instances, the loan agent of the company through whom the loans were negotiated, and this statement was transmitted to him by Barger, the chairman of the company's financial committee. A few shares of the company's stock had been transferred by Corwine to Barger in trust to enable the latter to become a director in the company, and to look after Corwine's interests therein. Certain of the holders of the paper, in the course of these transactions, became urgent for the payment of the amounts due them, and in March, 1894, with the concurrence, and probably under the advice, of Barger, Corwine stated to his children, the appellants in this case, that he would be compelled to sell his property, because his creditors were pressing, and he thereupon proposed to the appellants to sell to them his interest in the lands alluded to. At this time, as already indicated, they owned an undivided one-half interest in the lands in possession, and would most probably soon be entitled to another undivided one-fourth, which then belonged to their mother, who was known to have made a will in their favor. She was at the time dangerously sick, and died on the 24th of April, 1894. Her will, duly admitted to probate, disposed of her property as had been expected. The proposition of Corwine to sell was agreed to by his children, and the purchase money was stipulated to be paid by taking up or providing for certain of the debts for which Corwine was bound as surety. The purchase money consideration ultimately amounted to $35,-515. Separate deeds were executed and delivered by Corwine to his four children, namely, the appellants, Keziah D. Barger, Mary W. Lee, Rachel M. Foster, and James D. Corwine. By agreements, previously consummated, there had been a division made of the land as between the children themselves, and deeds of partition had fixed the different tracts of the land so far as they were concerned, although the undivided one-fourth interest of the father had in no way been set apart to him. Upon the portions of the land which fell to the children in this partition each of them had, some years previously to March, 1894, erected valuable improvements, at a cost to each of probably $10,000. The deeds executed by the father were made and dated March 12, 1894, and were then delivered by him to the grantees, respectively. The entire consideration was soon afterwards paid in full by the children, in about equal proportions, and the sum thus paid was actually applied to the payment of the debts upon which the father was bound, in the manner indicated. All of the deeds were sooner or later placed in the hands of W. B. Lee, the husband of one of the appellants, for record, and soon afterwards he sent those to Mrs. Lee and Mrs. Barger to the proper officer in Ross county for that purpose, but before it was done, under the urgent advice of John W. Barger, they were recalled from the office upon a telegram from Lee. The others, at the request of Barger, were also withheld from record. None of the deeds were recorded until after a fire, which occurred on November 7, 1894, had destroyed the plant of the National Cotton Seed Oil & Huller Company at Memphis, and left it without credit, and probably without any property of value, except some insurance, although it owned some patents for inventions, which excited some expectations in the more sanguine of its stockholders. The deeds were all put to record November 10, 1894, soon after knowledge of the fire had reached the grantees, and upon Barger's suggestion. Meantime several new loans had been negotiated on behalf of the company, upon notes secured by John W. Corwine and others as sureties, and certain others of the notes theretofore given had been renewed. John W. Barger had aided in bringing this about. While Barger had full information of the amount of John W. Corwine's liabilities, it does not appear from the testimony that any of Corwine's children knew anything about his indebtedness, except to the extent that the purchase money paid by them for the land had provided for or extinguished it, and there is some ground for the supposition that Corwine in-

tended in the course he pursued to provide for his aliquot share of the debts upon which he was surety jointly with others. He, however, died June 22, 1895, before the issues in this suit had been made up, and did not testify. ,

The bill of complaint attacked the good faith of the several conveyances of John W. Corwine to his children. It charged that the consideration for each conveyance, if paid at all, was grossly inadequate; that the conveyances were made to cheat, hinder, and delay the creditors of John W. Corwine, and that they were concealed and withheld from the records for the fraudulent purpose of giving to John W. Corwine a fictitious credit, and were designed and intended to be the means of defrauding the complainant,—all of which was expressly denied in the answers of the defendants. The prayer of the bill was to the effect that the deeds might be set aside, and the lands be subjected to the payment of the complainant's debts.

The court below sustained the complainant's views of the transactions, pronounced the deeds to be fraudulent, and decreed a sale of the one undivided one-fourth interest of John W. Corwine in all of the said lands, unless within a time named in the judgment the appellants should pay the complainant's debt and those of certain other creditors, who, in various ways, had intervened or become parties to these proceedings. 89 Fed. 774, 95 Fed. 54. No provision, however, was made in the decree for any equitable allowance for the improvements. To reverse that judgment this appeal has been prosecuted by the children of John W. Corwine.

George K. Nash, Miller Outcalt, and J. B. Foraker, for appellants. Albert Douglas and J. W. Mooney, for appellees.

Before LURTON and SEVERENS, Circuit Judges, and EVANS, District Judge.

EVANS, District Judge, after stating the facts, delivered the opinion of the court.

Upon the case as presented by the record, several questions of great importance to the parties arise, and each has received the very careful consideration of the court.

1. The evidence has failed to satisfy us that the consideration for the conveyances from John W. Corwine to his children was inadequate. It seems to the court upon the testimony that, under the conditions then existing, the consideration paid for this undivided interest in the land was not inadequate at all, and certainly not so grossly so as thereby to taint any of the conveyances with fraud. The children of the grantor probably paid more than could have been obtained for this undivided interest from any other purchaser at that time and under all the circumstances then surrounding the parties. Nor can we doubt that the consideration was in good faith paid to the full extent agreed upon. It is equally certain that the entire sum thus paid was actually devoted to the satisfaction of debts upon which John W. Corwine was bound as surety for the National Cotton Seed Oil & Huller Company. These facts make it obvious that though there was a manifest preference of certain creditors, which is permitted by the laws of Ohio, there was no actual fraud in the transaction, although it occurred between a father and his children,—a fact which always calls for the careful scrutiny of the court. The close examination of the testimony which we have given in this case has led us to the conclusion just stated.

2. It is also clear from the testimony that, whatever the cause of the delay, there was no agreement nor understanding between the

grantor and any one of the grantees that the deeds should be withheld from record. There appears to be no evidence to show that John W. Corwine, in making these conveyances to his children, entertained any purpose to hinder, delay, or defraud his creditors, and certainly there is no testimony to show that any of his children knew of such intention if he had it, nor that any one of them intended to aid him in such purpose. So far as the evidence manifests the intention of John W. Corwine at all, it shows that he intended, not to defraud but to prefer some of his creditors, to the exclusion of others, which, as we have seen, it was lawful for him to do under the laws of the state of Ohio. Cross v. Carstens, 49 Ohio St. 548, 31 N. E. 506. His children purchased and paid for his property, and thus enabled him to consummate this purpose. The absence of knowledge upon the part of his children of a fraudulent purpose of the father, coupled with the fact that a valuable consideration was in good faith paid by them for the land, makes it quite clear, upon the authorities, that at least three of the appellants should not be required to surrender to Corwine's creditors the lands they had purchased and paid for, and the value of which they had already seen fully devoted to the payment of his debts as far as it would go. Jones v. Simpson, 116 U. S. 609, 6 Sup. Ct. 538, 29 L. Ed. 742; Crawford v. Neal, 144 U. S. 585, 12 Sup. Ct. 759, 36 L. Ed. 552; Bamberger v. Schoolfield, 160 U. S. 149, 16 Sup. Ct. 225, 40 L. Ed. 374. This being so, and especially in view of section 4134 of the Ohio Statutes, and the authorities presently to be noticed, the mere withholding from the records by W. B. Lee, at the instance of John W. Barger, of the several deeds to Mary W. Lee, Rachel M. Foster, and James D. Corwine, without their knowledge or direction, was not, in our opinion, a fraud upon any creditor of John W. Corwine. The title of Corwine to the land passed to those grantees upon the delivery of the deeds. They did not authorize John W. Barger to represent them, and in fact he did not represent them, nor act for them, when, for purposes of his own, and probably those of the corporation he represented, he induced W. B. Lee to withdraw from the recorder's office of Ross county, before their registration, the deeds to Mrs. Barger and Mrs. Lee, which had been sent there for record, nor when he induced Lee, for like reasons, to withhold from the records the deeds to the lands in Pike county. No creditor was thereafter induced, either by Mrs. Lee, Mrs. Foster, or James D. Corwine, or by any one acting for them, to loan money or to renew notes theretofore given or indorsed by their father. They had purchased and paid for their father's interest in the lands, the deeds therefor had been executed and delivered to them, and unless they withheld them from the records, and actively concealed them for the purpose of giving to their father a fictitious credit, and unless that purpose was so carried into effect as thereby to induce some of the complainants or cross-complainants to loan money or disadvantageously to change their condition respecting some debt or right against Corwine, then no party to this suit has any reason to complain because their deeds were not put to record. There is no proof of any such purpose, or of any such conduct upon the part of either of these three appellees,

nor of any one authorized to act for them. It therefore results that the judgment of the circuit court against the appellants Mary W. Lee, Rachel M. Foster, and James D. Corwine, and adjudging the conveyances to them, respectively, to be fraudulent and void, was erroneous, and that instead of such judgment being rendered the bill of complaint and the cross bills against them should have been dismissed.

3. We have been constrained, however, to reach a different conclusion respecting the appeal of Mrs. Barger, not because of any wrongful conduct or acts of her own, but for the reason that she must be considered to have delegated to her husband, John W. Barger, power and authority to act for her respecting the deed and all that pertained to it, and he so exercised that authority as to give to the complainant and the cross complainants, as creditors of her father, an equitable claim to the interest in the land which the latter conveyed to her, which must be treated as superior to her own rights therein.

Section 4134 of the Ohio Statutes is in the following language:

"All other deeds and instruments of writing for the conveyance or incumbrance of any lands, tenements or hereditaments, executed agreeable to the provisions of this chapter, shall be recorded in the office of the recorder of the county in which the premises are situated, and until so recorded or filed for record the same shall be deemed fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or instrument."

It cannot be doubted that it is the purpose of this statute to require that deeds to land shall be recorded, but no time is fixed by the section within which it must be done. It is expressly provided, however, that until the deed is so recorded it shall be deemed fraudulent, so far as it relates to a subsequent bona fide purchaser who has no knowledge of the former deed. But not only upon its face, but upon the familiar maxim, "Expressio unius est exclusio alterius," this protective purpose of the statute is limited to subsequent bona fide purchasers only. It is not in terms extended to creditors. And the supreme court of Ohio, in its decisions construing this statute, have left no doubt upon the subject. Stewart v. Hopkins, 30 Ohio St. 502; Irvin's Lessees v. Smith, 17 Ohio, 226. As none of the complainants or cross complainants are subsequent bona fide purchasers, they would be entitled to no relief in this case were it not for certain equitable principles which operate upon the ground of estoppel, and which have found an authoritative expression in the opinion of the supreme court of the United States in the case of Blennerhasset v. Sherman, 105 U. S. 100, 26 L. Ed. 1080. It was there held that a mortgagee who knows of the insolvency of the mortgagor, and who, for the purpose of giving the former a fictitious credit, actively conceals the mortgage, does not put it upon the records, and who represents the mortgagor as having a large estate and unlimited credit, does such acts as render the mortgage void as against the creditors of the mortgagor to whom the representations were made. We think this principle undoubtedly applies to a sale as well as to a mortgage, and particularly where the representations operate as an in-

ducement to lend money or to suspend legal remedies by the renewal of notes which cover previous loans. We entertain no doubt that the principles then announced by the supreme court must control our judgment upon the appeal of Mrs. Barger, if the facts are such as to bring this case within their operation, and we proceed to inquire whether that is so.

The testimony leaves no doubt in the minds of the court upon the following propositions of fact, namely, that Mrs. Barger, then in great distress by the bedside of her mother, who was soon to die, delegated authority to her husband, John W. Barger, to act for her in all matters pertaining to the entire transaction; that he did act for her, and that by his urgent solicitation W. B. Lee was induced to telegraph to the recorder of Ross county for the return of the deeds sent there to be recorded, and before it was done; that he did this as soon as he was informed that Lee had sent them for that purpose, and shortly after the deeds were executed; that, by equally urgent and timely solicitation, he induced Lee to keep from the records the deeds to the lands in Pike county; that previous to the making of the deeds he, as representative of Corwine and of the corporation the failing fortunes of which he was trying to sustain, was fully aware of the extent and nature of the liabilities of John W. Corwine as surety of the National Cotton Seed Oil & Huller Company, and of the utter inability of both that concern and of Corwine to discharge them; that after he had induced Lee to keep the deeds from the records he knowingly left in the loan agent Lindley's hands the authority to represent, and the means of representing, to the then existing creditors of Corwine, and to others who soon afterwards became such, that Corwine was solvent, supporting and fortifying it by the previous written statement of Corwine as to his property; that in this way Barger obtained, or assisted in obtaining, new loans for the company, upon which Corwine was accepted as surety, and the renewal of certain outstanding notes, upon which he was likewise bound, all after the deeds were, to Barger's knowledge, delivered to the grantees; that Barger did not in any way make known the fact of these conveyances either to Lindley or to the parties with whom he was dealing, but, on the contrary, that Barger, after the deeds were made, assured the agent of appellees, Rockhold, Brown & Co., that the notes they were expecting to buy were perfectly good, although he knew that they largely relied upon the financial ability of John W. Corwine to make them so. It also seems to be certain that Barger did these things for the sole purpose of enabling his corporation, principally upon the credit of Corwine, to continue to obtain new loans or renewals of the character mentioned, and that these influences operated until the chance to get such favors was destroyed by the burning of the plant of the corporation on November 7, 1894. He then very promptly advised the recording of all the deeds, and it was done at once.

Upon the evidence it seems manifest that Barger availed himself of the authority delegated to him by his wife to obtain a fictitious credit for John W. Corwine by representing him to be perfectly

good, and by actively concealing the deed to her, and by procuring the withholding from the records, not only of that deed, but of the others. For this, however innocent she may in fact be (and there is no proof that she knew anything about it), Mrs. Barger is so far responsible for the acts of her husband, acting as her agent, as to be prevented and estopped from claiming the interest in the land conveyed to her by her father as against the complainants and cross complainants, whatever may, as between the latter, be hereafter determined to be their respective priorities in right. The deed to Mrs. Barger must, upon the grounds stated, be held to be void as to Corwine's creditors, and we think the facts upon which this result depends have been established by the proof with all the clearness demanded by the rules laid down in the case of Brant v. Iron Co., 93 U. S. 336, 23 L. Ed. 927. The creditors of John W. Corwine, having been induced to do what they did by means of the conduct of the agent of Mrs. Barger, have a better right to the protection of the court than she has, not only upon grounds of estoppel, but also upon the familiar principle that where one of two innocent persons must suffer that one shall suffer who furnished the opportunity for inflicting the injury.

Other questions have been raised and argued, but, while we have examined them, we do not deem it needful to discuss them in this opinion.

We conclude that the judgment of the circuit court against Keziah D. Barger was proper, with this exception: Inasmuch as the deed to her was void as to appellees, the judgment should have directed the ascertainment of the enhancement of the value of the interest of John W. Corwine in the land by reason of the lasting improvements put thereon by her, and should have directed that any sale under the judgment of the interest in the land conveyed to her by him should be subject to a charge in her favor of one-fourth of the enhancement of the value of said interest as thus ascertained. As to her, the judgment should be and is modified to that extent, but it is otherwise affirmed. Except to the extent indicated as to appellant Keziah D. Barger, the judgment of the circuit court is reversed, with costs, and remanded, with directions to dismiss the bill and cross bills as against the appellants Mary W. Lee, Rachel M. Foster, and James D. Corwine, and otherwise to proceed pursuant to this opinion. As between appellant Keziah D. Barger and the appellees, no costs are adjudged.