## MORIMURA *v.* SAMAHA.

---

FRAUDULENT CONVEYANCES; CONSTRUCTIVE NOTICE OF FRAUD; EVIDENCE; ATTACHMENT AND GARNISHMENT; COUNSEL FEES.

1. In a fraudulent conveyance case where the vendee, claiming to be an innocent purchaser without notice, testifies that he borrowed part of

the consideration paid by him to his vendor from a third person, the record of a judgment against such third person, rendered a few months prior to the alleged sale, which includes the testimony of such third person in supplemental proceedings in execution of such judgment, to the effect that he was penniless at or about the time the money was so alleged to have been borrowed from him, is inadmissible in evidence on behalf of the attacking creditors.

2. But where in such a case such third person called as a witness by the alleged fraudulent vendee testifies as a witness for him, use may be made of such record in his cross-examination by the creditors for the purpose of contradicting him, and in such cross-examination considerable latitude should be allowed.

3. Where creditors attack a conveyance by their debtor as fraudulent, and show fraud on his part, the burden is on the grantee to show that he actually paid the consideration named in the deed; but on his so showing, the burden is then on the creditors to show that he had notice of his grantor's fraud.

4. A purchaser from a fraudulent vendor, as in other cases of purchasers of defective titles, is put upon inquiry where he has knowledge of facts and circumstances reasonably sufficient to excite the suspicions of a man of ordinary prudence and business capacity as to the purpose and intent of his vendor, which, if inquired into with ordinary diligence, would lead to the discovery of that purpose and intent, in such case his situation not being different in law from that of one who is shown to have had direct and certain knowledge. (Following *Manogue* v. *Bryant*, 15 App. D. C. 245.)

5. A statute allowing a reasonable counsel fee to an alleged fraudulent assignee or transferee as a garnishee, where an issue as to the validity of the transfer to him is found in his favor, is not void, although it does not allow a counsel fee to be taxed against him if the issue is found against him. (Construing D. C. Code, secs. 460, 470, 472, and 473.)

6. What is a reasonable fee under such circumstances is a matter within the discretion of the trial court, the exercise of which will not be reviewed on appeal except where palpably abused.

No. 1451.    Submitted February 17, 1905.    Decided March 8, 1905.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on the verdict of a jury in favor of the claimant in a proceeding by attachment and garnishment.                 *Reversed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a judgment rendered in favor of the claimant in a proceeding by attachment and garnishment.

Haggar Brothers and Daavid Company had been engaged in business in the city of Washington as dealers in oriental goods, etc. On November 30, 1903, they were indebted to various merchants in the city of New York in about the sum of $11,392 for merchandise sold and delivered between October 15 and November 27, 1903. Twenty-two deliveries were made between November 1 and November 27. Credits had been given for thirty and sixty days, and the bills were not due until after November 30, 1903. On that day Haggar Brothers and Daavid Company sold their stock in bulk to Mansour Samaha. A written assignment was made on that date reciting a consideration of $10,679.60 in hand paid. This instrument was recorded, but the inventory attached when produced on the trial was not. This inventory is general in its descriptions of the articles contained in the stock. Many items are included in one entry, of which the following is an example: "676 pieces of Japanese china, Austrian, German and French china, terra cotta figures Deutch and R. Etzuma—$559.75."

Prior to this transfer Haggar Brothers and Daavid Company had been selling goods daily at auction. On December 4, 1903, they addressed the following letter to one of their creditors:

Gentlemen:

We regret to have to inform you that owing to losses incident to an unusually dull season and unexpected heavy expenses, we have been compelled to discontinue our business. We endeavored very earnestly to continue, but lack of capital, with the losses suffered, rendered this impossible. An opportunity presented itself to us to sell out what was left of the stock and business, and this we did to Mansour Samaha, of this city, who has taken possession of the property, our bill of sale to him having been recorded a few days since.

We are at this time unable to discharge our indebtedness to

you, but we expect to resume business in February next, when we shall receive, we believe, capital sufficient to permit us to do this. About that time we hope to commence to pay the debtors that we now owe, and liquidate them in full as rapidly as the means at our disposal will permit.

In conclusion, we trust that you will be patient with us, and accept our assurance that it is our very sincere desire to get rid of all our obligations as soon as it is possible to do so. In the meantime, we suggest, nothing could be gained by suing us, and indeed, if that were done, it would embarrass very much our expected resumption of business in February next.

Truly yours,

Haggar Bros. & Daavid Co.

Per N. E. Haggar.

S. E. Haggar.

F. S. G. Daavid.

On December 9, 1903, Morimura Brothers began an action of assumpsit against Haggar Brothers and Daavid Company in the supreme court of this District, their particulars of demand showing bills for merchandise sold and delivered amounting in the aggregate to $875.79. A writ of attachment was sued out on the same day, and sufficient of the goods in the hands of Samaha to satisfy the demand and costs were seized thereunder. The writ further commanded the marshal to notify any person, other than defendants, who might be in possession, to appear and show cause why the property should not be condemned.

Notice in garnishment was also served upon Samaha to show cause, etc., and to answer the ordinary interrogatories, two in number, propounded to him as garnishee. On December 11, 1903, Samaha filed a sworn petition in the cause, alleging the seizure of the goods and setting up title thereto. He alleged the purchase and assignment made on November 30 for the sum of $10,679.60, and that at the time of making the same and paying the money he had "no notice, either actual, constructive, express, or implied," of the existence of any claims against his vendors, and so forth. This petition was also prayed to be

taken as answer to the interrogatories that had been propounded to him. Plaintiffs joined issue on the petition, and asked for trial by jury. December 15, 1903, the attached property was delivered to Samaha upon the execution of a bond in due form. On December 10, 1903, A. and M. Karagheusian began a similar action against Haggar Brothers and Daavid Company to recover $1,767.55, in which like proceedings were had. The two cases were tried together on February 10, 1904, and resulted in a verdict for the claimant Samaha. The court overruled motions for new trial and entered judgment for Samaha in each case, discharging the property seized, with costs, and an allowance of $150 as reasonable counsel fees.

Each plaintiff appealed from the judgment separately rendered, and both appeals have been argued and submitted together.

*Mr. Charles Cowles Tucker, Mr. J. Miller Kenyon,* and *Mr. H. W. Sohon* for the appellants.

*Mr. Jackson H. Ralston, Mr. Frederick L. Siddons,* and *Mr. Eugene A. Jones* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first questions arise on exceptions taken by the appellants to the exclusion of evidence, and will be considered together.

It appears from Samaha's testimony that he was engaged in business as a dealer in rugs and other oriental goods in a small store on Fourteenth street, about 14 by 30 feet in floor dimension, with a stock of the average value, during the season, of between $5,000 and $6,000. That he had a stock between $15,000 and $16,000 in value at Atlantic City; that Haggar Brothers and Daavid Company proposed to sell their entire stock at 1110 F street N. W. to him about November 23, 1903; that he examined the stock, made an inventory, and concluded

the purchase for the sum of $10,679.60, which he paid in cash, turning over bills for that amount; that he had the money in a small safe in his store which cost $40; that he was in the habit of keeping his money in the safe, but had small accounts for convenience with two banks in the city; that $4,000 of this money had been obtained from one Maloof in New York, on the 10th day of November, 1903; that he went to New York to attend a large rug sale which was advertised for cash; that he asked Maloof to lend him $4,000, who got the money from his bank and delivered it to him. That he gave Maloof his note for it without security. That he purchased a lot of goods and offered the cash, but the seller told him his credit was good and billed them to him on a credit of sixty days. That as he had to pay interest to Maloof anyhow, he brought the money home and deposited it in the safe. That he used it in paying Haggar Brothers and Daavid Company. After the attachment he delivered some of these goods and some of his own to Maloof in payment of the said note. The claimant, to whom had been assigned the position of plaintiff on the trial, rested his case on his own testimony. As tending to show that Maloof could not have advanced $4,000 in cash to Samaha as alleged, the creditors offered a transcript of proceedings in a court of New York, showing an action against Maloof by one Zainey to recover $2,100, begun May 15, 1902, in which judgment had been rendered for $2,205.40 on March 6, 1903. The transcript showed also the examination of Maloof in supplementary proceedings under the New York practice, which examination continued from time to time to November 30, 1903. Under this examination Maloof denied having any property or an interest in the N. N. Maloof Company, of which he was treasurer, and stated that he owned one share of stock in said corporation of $100 par value, which had been hypothecated for a loan of $90, and that he was then an employee of said company, receiving a salary for his services. The court excluded the record on the objection of the claimant, to which the creditors excepted.

N. N. Maloof was introduced as a witness for claimant in

rebuttal.   He testified to the delivery to Samaha of the $4,000 in New York on November 10, 1903.   The money came from the corporation of which Maloof was treasurer.   Maloof drew a check on the Fulton National Bank in favor of bearer for $4,000, and signed the same as treasurer.   The check was produced, and shows the word "treasurer" in very small print after the signature of Maloof.   It was indorsed "N. N. Maloof & Co., N. N. Maloof, treasurer, and W. P. Maloof;" that he cashed the check and delivered the cash to Samaha for his rug purchase; that there was more money in bank than this; that the loan was made to Samaha, who was a good man and in good credit, and that his business was to give money "to make interest better than selling goods.   Interest can be 7 or 8 per c.nt, and make something more by my commission."

Counsel for the creditors then proposed to ask witness some questions concerning his statement as being a stockholder in the N. N. Maloof Company, but were interrupted by an objection offered by the claimant to the effect that the loan had been made by the Maloof Company and the supplemental proceedings related to the witness personally.   Counsel for the creditors then said: "I purpose showing by this record that this man testified in these proceedings that he had one share of stock of the par value of $100 in that company; that he had hypothecated to Mr. Macksuld, an officer of the company, for $90.   I further purpose to show by this deposition that he was simply an employee of that company, and had no other interest in it but this one share of stock, and that his story that he loaned $4,000 of this company's money, or promised to loan it, without consulting any of the other officers of the company, is a mere fabrication."   The transcript was then offered, again excluded, and exception noted.

There was no error in excluding this transcript upon the occasion of either offer.   There is no rule of evidence, or exception to any such rule, that would warrant its admission as original evidence.

The only proper use that could be made of it would be in the cross-examination of Maloof.   As the fact of the advance of the

$4,000 to Samaha had been made by him of great materiality in the determination of his claim as an innocent purchaser for value, considerable latitude in the cross-examination of Maloof would be permissible in order to determine its truth or falsity. His connection with the Maloof Company, his interest therein, his authority to loan its money without the advice and consent of other officers, and kindred matters might properly be inquired into. *Sonnentheil* v. *Christian Moerlein Brewing Co.* 172 U. S. 401, 410, 43 L. ed. 492, 496, 19 Sup. Ct. Rep. 233. As said by Mr. Justice Brown in that case: "Parties contemplating a fraud frequently pursue such devious courses to conceal their designs, and resort to such subtle practices to mislead their unsecured creditors, that the fraud becomes impossible to detect, unless the door be swung wide open for the admission of all testimony having any possible bearing upon the question. Facts which to the court might seem of no pertinence, and be rejected as having no legal tendency to show knowledge of the fraud, might be considered by the jury as significant and indicative of a guilty participation. Even negative evidence. may sometimes have a positive value." If a statement of importance in this view could be contradicted by one made in his former examination, after his attention had been directly called to it, then so much of the transcript as would establish that contradiction would be admissible to impeach the witness's credibility, but for no other purpose.

It would seem that the purpose of the counsel for the creditors was to proceed in that way, until interrupted by the objection, but as his question was not completed, so far as the bill of exception discloses, we have nothing before us by which to determine its admissibility. *Shauer* v. *Alterton,* 151 U. S. 607, 616, 38 L. ed. 286, 289, 14 Sup. Ct. Rep. 442.

2. That Haggar Brothers & Daavid Company made the sale to Samaha with the intent to defraud their many creditors the jury could have had no reasonable doubt. The thing for them to ascertain from the evidence was whether Samaha made the purchase in good faith. To show purchase in good faith the burden was upon him to prove that he actually paid the con-

sideration named in the contract of sale. In addition thereto he must have had no previous notice of the fraudulent intent of his vendors. Upon this proposition the presumption was in his favor, and the burden developed upon the creditors to show, by evidence direct or circumstantial, that he had such notice. *Jones* v. *Simpson,* 116 U. S. 609, 614, 29 L. ed. 742, 744, 6 Sup. Ct. Rep. 538.

For the guidance of the jury in determining these simple issues three special instructions were given to the jury at the request of the claimant, and eighteen were requested by the creditors, five of which were granted and thirteen refused.

It is unnecessary to consider these in detail. Of those given to the jury in application to the evidence relating to the payment of the consideration, it is sufficient to say that they do not appear to be objectionable. Where a sale has been made by the vendor with the intent to defraud creditors, it is not necessary to constitute bad faith in the purchaser, who may have paid a valuable consideration, that he either actually participated in the scheme to defraud, or had actual knowledge of the fraudulent intent of his vendor. Bad faith may exist where the facts and circumstances of the transaction are such as to put him upon inquiry. *Jones* v. *Simpson,* 116 U. S. 609, 614, 29 L. ed. 742, 744, 6 Sup. Ct. Rep. 538; *Shauer* v. *Alterton,* 151 U. S. 607, 622, 38 L. ed. 289, 291, 14 Sup. Ct. Rep. 442; *Sonnentheil* v. *Christian Moerlein Brewing Co.* 172 U. S. 401, 413, 43 L. ed. 492, 497, 19 Sup. Ct. Rep. 233; *Humphries* v. *Freeman,* 22 Tex. 45, 50; Wait, Fraud. Conv. 2 ed. sections 379, 380; Bump, Fraud. Conv. 4th ed. sec. 184.

A purchaser from a fraudulent vendor, as in other cases of purchasers of defective titles, is put upon inquiry where he has knowledge of facts and circumstances reasonably sufficient to excite the suspicions of a man of ordinary prudence and business capacity as to the purpose and intent of his vendor, which, if inquired into with ordinary diligence, would lead to the discovery of that purpose and intent. In such a case his situation is not different in law from that of one who is shown to have had direct and certain knowledge. Bump, Fraud. Conv. 4th

ed. sec. 184, and cases cited; *Wood* v. *Carpenter,* 101 U. S.
135, 141, 25 L. ed. 807, 809; *Manogue* v. *Bryant,* 15 App. D.
C. 245, 261.

The third special instruction requested by the creditors cor-
rectly stated this principle for the information of the jury, and
ought to have been given or embodied in the general charge.

After its refusal the court read the statute relating to fraudu-
lent conveyances, and then charged the jury as follows:

"As to what is meant by the words 'previous notice,' in our
statute, must be largely for the consideration of the jury, as a
matter of fact. The words are plain, and a judicial definition
cannot be of great aid for a jury of ordinary intelligence in the
use of the English language. If Samaha knew that said debt-
ors, Haggar Brothers and Daavid Company, did actually in-
tend to hinder, delay, or defraud their creditors by making
said sale, then he had notice, no matter how he obtained such
knowledge; and if he was notified of any fact exciting sus-
picion and which would necessarily make him conscious of hav-
ing the means of knowledge of such intent within his reach by
making inquiry, and he should wilfully abstain from making
such inquiry to avoid having notice, he must be held to have
notice because of such fact and such conscious knowledge of the
means of information."

This was an incorrect statement of the law. As before pointed
out, all that is required is that the surrounding facts and cir-
cumstances shall be reasonably sufficient to excite the sus-
picions of a person of ordinary care and business capacity, and
prompt an inquiry which, if prosecuted with reasonable dili-
gence in view of all the circumstances, would naturally lead to
the discovery of the fraudulent intent of the vendor. It is not
required that he shall "wilfully abstain from making such in-
quiry to avoid having notice."

3. The last question for consideration arises on error as-
signed upon exceptions taken to the allowance by the court of
the sum of $150 in each case as the reasonable counsel fee of the
garnishee.

Section 470 of the Code permits the levy of an attachment,

in actions by creditors, upon property in the hands of the "alleged fraudulent assignee or transferee; as a garnishee." Section 472 provides that if the levy shall not be set aside the garnishee may plead that he was a bona fide purchaser without notice of any fraud on the part of the defendant, and said plea shall make an issue to be tried by the court or by the jury if either party desires it. See sec. 460. Section 473 provides that "if said issue is found in favor of the said garnishee, judgment shall be rendered in his favor for his costs and a reasonable counsel fee."

We cannot agree with the appellants that this provision is beyond the power of Congress to enact. The Code provides a special remedy by attachment, on behalf of creditors in such cases, before their claims accrue due, which is coupled with the condition aforesaid. If parties avail themselves of the remedy they must do it subject to the condition.

The amount of the fee must be reasonable; that is to say, determinable by the facts and circumstances of the case.

What is a reasonable fee in a particular case of the kind is a matter within the discretion of the court, and the exercise of that discretion will not be reviewed except where palpably abused.

For the reasons heretofore given, the judgment will be reversed, with costs, and the cause remanded, with direction to set aside the verdict and grant a new trial. It is so ordered.

*Reversed.*