C. WALLACE HARMON, TRUSTEE

*vs.*

ANNIE M. PERRY AND ELWIN E. PERRY, ET ALS.

York.     Opinion, November 9, 1934.

188

*John P. Deering,* for plaintiff.
*Spinney & Spinney,* for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

STURGIS, J.   This is a bill in equity in which the Trustees of the bankrupt estate of Albert G. Perry of Wells in the County of York and State of Maine seeks to set aside certain conveyances alleged to have been made with the intent to hinder, delay or defraud his creditors and prevent the properties from being distributed under the Bankruptcy Laws of the United States.

It is alleged and admitted that on October 11, 1928, Albert G. Perry transferred and conveyed to his son, Elwin E. Perry, a defendant in this action, a parcel of land in Wells, containing about three acres and subject to a mortgage to the Sanford National Bank of Sanford, Maine. On November 1, 1928, he conveyed to his wife, the defendant Annie M. Perry, his homestead also situated in Wells and subject to a mortgage to one Fred H. Bridges. He owned no other property of any substantial value at that time.

It is further alleged that, when the bankrupt made these conveyances, he was insolvent, contemplated bankruptcy and intended to defraud his creditors, as his grantees then had reasonable cause to believe. It is denied that either Annie M. Perry or Elwin E. Perry were *bona fide* purchasers for value or that the holders of the titles to the equities of redemption in the properties are *bona fide* holders for value.

On November 7, 1930, Albert G. Perry was adjudicated a bankrupt in the United States District Court for the Southern District

of Maine, and this complainant, as Trustee of his estate, instituted this proceeding. The defendants, in their several answers, deny the charges made against them. The sitting Justice hearing the cause sustained the bill and ordered the defendants to convey their interests in the properties in controversy to a master appointed to make a sale, pay the outstanding mortgages and turn the proceeds over for distribution among the bankrupt's creditors. The case comes forward on appeal.

The Trustee brings this action under U. S. Statute 1898, Chap. 541, Sec. 70 e, U. S. C. A. Title 11. That clause of the Bankruptcy Act gives the Trustee authority to avoid any fraudulent transfers of his property by the bankrupt "which any creditor of such bankrupt might have avoided," but whether a particular transfer is or is not fraudulent as to creditors depends not upon the Bankruptcy Act, but upon the laws of the state where the transfers are made. *Woodman* v. *Butterfield,* 116 Me., 241, 101 A., 25; *Holbrook* v. *International Trust Co.,* 220 Mass., 151, 154, 107 N. E., 665; *Small* v. *Gilbert,* 56 Fed. (2d), 616.

The burden of proving that the conveyances in question were fraudulent is upon the complainant. Fraud is never presumed. It must be always established by clear, full and convincing proof. *Grant* v. *Ward,* 64 Me., 239; *Frost* v. *Walls,* 93 Me., 405, 45 A., 287; *Small* v. *Gilbert,* supra. The charge of fraud is a serious one, and it is well settled that to sustain an allegation of fraud there must be more than surmise, suspicion or conjecture, which are not substitutes for proof. *Bartlett* v. *Blake,* 37 Me., 124, 127; *Minott* v. *Johnson,* 120 Me., 287, 113 A., 464, 465; *Adams* v. *Ketchum,* 129 Me., 212, 151 A., 146; *Thibodeau* v. *Langlais,* 131 Me., 132, 159 A., 720.

In support of his essential allegations, the complainant called the bankrupt and his wife, the defendant Annie M. Perry, and made them his witnesses. They testified that the conveyances in question were made in good faith, for valid and adequate considerations, and at a time when bankruptcy was not contemplated. There is no convincing evidence to the contrary. The defendant, Elwin E. Perry, testifying for the defense, denied that either his transactions with his father, Albert G. Perry, or his subsequent dealings with his mother, Annie M. Perry were fraudulent, and the few disinterested

witnesses who testified had no direct knowledge of the facts and circumstances attending the conveyances. Under the general rule, the complainant, in making the parties to the transactions his witnesses, is bound by their statements, except as they are contradicted by credible evidence of probative value. *Kirby* v. *Canal Co.*, 46 N. Y. S., 777; *Voorhees* v. *Unger*, 135 N. Y. S., 113, 115; *Dunmore* v. *Padden*, 262 Pa., 436, 105 A., 559; *Entwisle* v. *Seidt*, 115 Fed., 864.

Albert G. Perry formerly operated a garage with his brother in Boston. Sometime prior to 1919, he came to Kingfield, Maine, and went into the lumbering business. In 1919-20, he was a foreman on a logging job in Amherst, Nova Scotia. In 1921, he ran a store in Newport, Maine, and in 1922 came back to Wells and bought a farm from one Fred Bridges, paying $6500 for it subject to a mortgage for $4500 which he assumed. This Bridges farm was his homestead and is the property which, after he had sold off two lots to one Souther, he conveyed to his wife on November 1, 1928, as here alleged. Mr. Perry later bought a piece of woodland from Arthur Littlefield, a house from Fred Pinkham and a parcel of land with the buildings thereon known as the Susan Jacobs place. He disposed of the Pinkham and Littlefield lots and sold off part of the Jacobs lot with the buildings on it. Sometime in 1927, Mr. Perry sold his brother his interest in the garage in Boston and received $10,000 for it. This he used, as he says, to reduce his mortgages and pay for or improve other properties he had previously acquired.

It does not appear to be necessary to go into the details of his other business ventures. He traded in real estate somewhat extensively and, as a side issue, carried on a grain business. He operated at a loss and finally in 1928, had used up his money and owned no property of any value except his homestead and a part of the Jacobs lot, so-called. He admits that at the time he could not pay his debts on demand or in the usual course of business, but shows that he was not heavily in debt and was not being pressed by his creditors. Except for a note for $800 due his uncle, Edward S. Larrabee, who is the largest unsecured creditor proving his claim in the pending bankruptcy proceedings, he has since paid practically all his then outstanding bills. According to Schedule A-3-4

of his petition in bankruptcy, his unsecured indebtedness, outside the Larrabee note and a few small items, amounts to about $700, which has been contracted since he conveyed these properties.

The first transfer to be considered is that made to the defendant, Elwin E. Perry. He testifies without contradiction that on August 3, 1926, his father agreed to sell him what remained of the Susan Jacobs property, which was then vacant land, for $1,000, and he paid the purchase price with money borrowed from one Fred Pinkham on his note indorsed by his father. He then built overnight camps with money he was earning and $1,000 which he borrowed from the Sanford National Bank on a mortgage which his father, who still held title to the property, gave in the first instance, and he later assumed. Albert G. Perry, the father, confirms this statement and denies that he had any title or ownership in the camps built upon the Jacobs lot. They both testify that, when on October 11, 1928, Mr. Perry conveyed this property, his son had already paid the full value of the land and built and paid for the buildings on it. The son denies that he knew that his father was in financial difficulties or that his purchase was in any way tainted with fraud. The statement of these witnesses concerning this transaction are in no way refuted. On the evidence, the defendant, Elwin E. Perry, was a *bona fide* purchaser for value of the Jacobs property. The suspicion of bad faith on his part, which the complainant finds in the record and argues on the brief, can not overcome the affirmative evidence offered in his behalf. Were this not so, the land he bought is not now open to reconveyance to the trustee in bankruptcy. On May 2, 1930, Elwin E. Perry sold it for $4500 with the camps he had built on it to Lillian P. Nichols, who paid him $1,000 in money, assumed the mortgage already on the property to the Sanford National Bank then amounting to $800, and gave him a second mortgage for $2,700. The validity of this transaction is not questioned. Lillian P. Nichols was an innocent purchaser without notice and acquired a good title as against the creditors of the original vendor. *Neal* v. *Williams*, 18 Me., 391 ; *Erskine* v. *Decker*, 39 Me., 467 ; *Butler* v. *Moore*, 73 Me., 151. The Nichols note and mortgage have since been assigned as collateral security for notes of Albert G. Perry and Annie M. Perry to the Ocean National Bank, which apparently is a *bona fide* holder for value. It is not

made a party to this proceeding nor is Lillian P. Nichols, the holder of the equity of redemption in the Jacobs land. Their equities can not be disregarded, much less destroyed, in this proceeding.

It is conceded that, when Albert G. Perry went to Amherst, Nova Scotia, his wife accompanied him and at that time took with her and deposited $2,167 in the Canadian Bank of Commerce. She says this was her money saved from her earnings and increased by the current rate of exchange between the United States and Canada. Nothing to the contrary is shown. While in Nova Scotia, she cooked in a logging camp, and $556.02 saved from her wages was added to her deposit. When they came to Newport, Maine, she brought her money, amounting to more than $2,700, with her. There she bought a house paying down $500 and giving or assuming a mortgage for $1,200 as a part of the purchase price. She later sold her equity in this property for $1,200, making a profit of $700 on the sale. All her money which she brought back from Nova Scotia, together with the proceeds of her Newport house, amounting to more than $3,400, she says she loaned to her husband, and, when on November 1, 1928, he conveyed the homestead at Wells to her, she gave him credit for these advances and paid him $400 in money which she had earned and saved taking overnight guests and serving meals to transients. Her testimony as a witness for the complainant is that, inasmuch as she assumed the mortgage on the homestead then amounting to $2,208, she paid more than $6,000 for the property which she received, which was its full value. It is not made to appear that the consideration she claims to have paid was inadequate.

A voluntary transfer or gift by a husband to a wife is *prima facie* fraudulent if at the time he is indebted, and if the transfer or gift embraces all the property which the husband possesses, the probative forces of the presumption is of the strongest. In such case, it is immaterial whether the grantee or donee is conversant of the fraud. *Seavey* v. *Seavey*, 114 Me., 14, 95 A., 265; *Robinson* v. *Clark*, 76 Me., 493; *Call* v. *Perkins*, 65 Me., 439. On the other hand, if the transfer or gift is made for a valuable and adequate consideration, it is valid unless there is a fraudulent intent on the part of the transferee. *Seavey* v. *Seavey*, supra; *Spear* v. *Spear*, 97 Me., 498, 54 A., 1106; *Blodgett* v. *Chaplin*, 48 Me., 322. And

a valid prior indebtedness owed to the grantee by the grantor may be a sufficient consideration for a conveyance by an insolvent debtor. It is not fraudulent as a matter of law for a debtor to pay one creditor for the purpose of giving him a preference over others. This is true as between husband and wife. *Seavey* v. *Seavey*, supra; *Hanscom* v. *Buffum*, 66 Me., 247; *Michaud* v. *Michaud*, 129 Me., 282, 151 A., 559.

It is true that the defendant, Annie M. Perry, in her testimony is somewhat vague and uncertain as to the times when she advanced her money to her husband and the specific amounts which she turned over. She kept no books and took no notes, but says she kept a record of her loans on pieces of paper which have been lost or destroyed since she received the conveyance from her husband and they squared accounts. The fact remains, according to her uncontroverted testimony, that she turned over to him more than $3,400 in money and expected it to be repaid. The doubts which grow out of her lack of verifying proof of her assertions give good ground for suspicion and conjecture. But "supposition, conjecture, guess or mere theory will not suffice. The effect of the evidence must be more exact." *Minott* v. *Johnson*, supra. This is not a case where the wife "never expected any payment" when she loaned money to her husband as in *Seavey* v. *Seavey*, supra.

Title to the bankrupt's homestead remained in his wife for nearly a year. They were indebted to Conant and Haskell on a note secured by a second mortgage on a house in Bath, and the few facts in evidence indicate that the mortgagees brought suit and attached the homestead. The son, Elwin E. Perry, came to his mother's assistance and purchased it from her together with her common interest in a property in Kingfield which was worth less than $1,000 and had descended to her from her mother. He borrowed $1,000 of Willis Underhill on a second mortgage on the homestead and turned it over to his mother, who paid Conant and Haskell and obtained a release of the attachment on the homestead. He assumed the first mortgage then amounting to $2,208 and held by Fred Bridges, and when he sold his Jacobs lot and camps to Lillian P. Nichols, to which reference has already been made, he paid his mother the $1,000 and the notes and mortgage for $2,700 he received in that transaction. The aggregate of his payments

was more than $6,900 and would appear to have been an entirely adequate consideration for the properties which he then purchased. Here again, on the face of the record, he was a transferee without fraudulent intent, paying a valuable and adequate consideration for what he received.

The complicated and involved dealings of the parties here charged with fraud, and their family relations, furnished ground for suspicion and called for a careful examination into the entire field of their activities. As was said, however, concerning very similar facts and circumstances, "Diligently and with courageous aggressiveness has the plaintiff endeavored to establish a cause; analytically has he dealt with the evidence; acutely has he argued. But we can not accept his estimate that the record leaves little to be desired." *Minott* v. *Johnson*, supra. The defendants severally received deeds to the properties with which this action is concerned. These deeds, on their face, establish the titles of the defendants, and creditors of the original grantor, in whose behalf the complainant acts, must impeach them by proof not theory. *Minott* v. *Johnson*, supra; *Call* v. *Perkins*, supra; *Winslow* v. *Gilbreth*, 50 Me., 90.

The conveyances here attacked were not made on the eve of bankruptcy, but more than two years before the petition was filed. There was no challenge by or for creditors during that period. The parties acted openly, recording their deeds promptly, and made no apparent attempt at concealment. A careful review of their acts in the light of the transcript of the evidence in this case does not show fraud which will avoid the defendants' titles. The bill must be dismissed with costs.

> *Appeal sustained.*
> *Decree in accordance with*
> *this opinion.*