## SIMON v. ROLFS et al.

## In re MEYER'S ESTATE.
### No. 5680.

Circuit Court of Appeals, Seventh Circuit.
May 15, 1936.

Arthur Chittick, John A. Niemeyer, and Walter W. Weiss, all of Chicago, Ill., for appellant.

Joseph Kamfner, Edwin A. Halligan, Samuel M. Lanoff, and Benjamin Levinson, all of Chicago, Ill., for appellees.

Before SPARKS and ALSCHULER, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

This is an appeal from a decree dismissing for want of equity a bill brought by a trustee in bankruptcy to set aside three conveyances by the bankrupt, appellee Meyer, to appellee Rolfs. Two of the conveyances were made within four months prior to the filing of a voluntary petition in bankruptcy on August 12, 1932, and the third, a transfer of 195 of the 200 shares of capital stock in a drug company of which Meyer was president, was made in July, 1931. Before the trial, Rolfs tendered to appellant, the trustee, the interest in the two parcels of real estate which had been conveyed to him within the four months period, without prejudice to his defense of the stock transfer. The theory of the bill of complaint was that all the conveyances were made without consideration, for the purpose of hindering, delaying and defrauding creditors, and that Rolfs was holding the property conveyed as secret trustee and agent for Meyer. To prove his case, appellant called as witnesses only Meyer, Rolfs, one Mueller, the principal non-mortgage creditor, and a brother of the latter. Appellees called no witnesses and offered no evidence.

Prior to the transactions in question, Meyer, a pharmacist by profession, had been engaged in a variety of real estate transactions. He had erected one building, had secured title to another by foreclosure of a second mortgage, and by purchase or trade had obtained others, all of which, however, appear to have been very heavily mortgaged. Finding himself unable to carry all his properties, he interested Rolfs in them, and in June, 1930, the latter bought a half interest in Meyer's equity in one of his buildings for $15,000, agreeing to pay half of the expenses. Six months later he purchased a half interest in Meyer's equity in another piece of property, paying $12,500 in two installments at that time, and agreeing to pay the same amount on or before July 31, 1931, and to pay half the expenses, including taxes, and interest on the mortgage. There is considerable dispute as to the degree and mode of exaggeration of income from the buildings practiced by Meyer in order to induce Rolfs to invest in them. However, although appellant points out the fact that Meyer does not admit making any concrete misrepresentation of any particular existing material fact, it is clear that he gave Rolfs to understand that the income and value of the properties were considerably in excess of their actual value. Before the time for the final payment of $12,500 due on the second property, Rolfs had found this out and as a result refused to go further with the transaction, stating his intention of dropping the whole thing and abandoning what he had already put into

it. In order to induce Rolfs to go on with the contract and make the final payment, Meyer agreed to give him his stock in the drug company, to hold as security for the success of the two real estate investments. After this agreement, Rolfs paid out approximately $6,000 on the two properties, in addition to making the payment of $12,500 he had threatened not to pay. In all, the evidence showed payments of $51,626 on the two properties, including the $40,000 purchase price. Rolfs testified that he had never received any income whatever from either property.

Appellant seeks to show that the conveyances were part of a systematic attempt on the part of Meyer to divest himself of all his property prior to the instituting of voluntary proceedings in bankruptcy. He called attention to the fact that the two appellees were friends of long standing, and that their friendship apparently had not been impaired in the slightest by the fraud alleged to have been practiced on Rolfs by Meyer. As a part of the scheme he pointed to two other conveyances by Meyer, one of a parcel of real estate to his mother, and the other of an insurance policy having a cash surrender value of $4,000, to his son. Meyer claimed, however, that he was indebted to each in a substantial amount, and the trustee did not attack these transfers as such, although he did set them out as part of Meyer's scheme to put his property out of reach of his creditors. He also called attention to the fact that for over a year prior to the filing of the bankruptcy proceeding, Meyer had apparently been very much afraid that Mueller, to whom he owed $29,300, and who held his note for that amount, would file suit on the note, and that as a result, Meyer might lose his drug business, which was represented by the 195 shares of stock alleged to have been fraudulently conveyed to Rolfs. He introduced evidence that Meyer had threatened bankruptcy for over a year before he filed his petition, and seeks to prove by that that the transfer of the drug company stock was for the purpose of putting it into friendly hands and out of the reach of creditors.

The master's report, approved by the court, specifically found that in July, 1931, Rolfs had a right to refuse to make further payment under the contract of January, 1931, on the ground of the pretenses, representations and promises made by Meyer to induce Rolfs to enter into the contract; that this furnished sufficient consideration for the agreement of July, 1931, whereby the shares of stock were transferred to Rolfs as security; and that if Meyer chose to guarantee and assure Rolfs against loss, he (the master) was unable to find anything fraudulent in connection therewith. Appellant takes exception to his statement that: "In order to find a transfer to have been fraudulently made, and in trust for the benefit of Meyer, the record as a whole must point with a high degree of certainty to that conclusion." He argues that the master is thus requiring the degree of proof which would be necessary to convict of a crime, rather than the preponderance necessary in a civil suit. He also objects that certain of the findings of fact are not supported by the evidence, a complete statement of which is included in the record.

Section 70(e) of the Bankruptcy Act, as amended by Act Feb. 5, 1903, § 16 (11 U.S.C.A. § 110(e) provides: "The trustee may avoid any transfer by the bankrupt of his property which any creditor * * * might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication." In other words, in order for the trustee to recover he must prove that some creditor could have avoided the transfer, which can not be done against a bona fide holder for value.

It is to be noted at the outset that Rolfs, while he holds the stock as security, is not a creditor of Meyer. They were partners in a joint venture, the future prospects of which Meyer had unquestionably greatly exaggerated. We agree with the master's conclusion that, even if after a long and protracted litigation, Rolfs' contentions as to the misrepresentations might be held to be without merit, they were not wholly groundless, and his assertion of them and refusal to continue with the transaction furnished consideration for Meyer's transfer of the stock as security for further advances. On the basis of the evidence in this record, it does not appear that Mueller, if he had found out about the transfer at that time, would have been in a position, as an unsecured creditor, to avoid the transfer. There is no indication in the record that Mueller at any time refrained from taking action on his note because he was relying on Meyer's ownership of the drug business to assure his pay-

ment of the note. The only other unsecured claims scheduled were two $500 ones incurred in 1929. The trustee is in no better position than Mueller or any other creditor with respect to the power to avoid the transfer for fraud. While the situation is an unusual one in that a party not a claimant in the bankruptcy proceeding is holding security which may ultimately return to the bankrupt, it is not an unreasonable one. Appellant relies on the inference of a secret agreement between the parties whereby he infers that Rolfs is merely holding as a secret agent for Meyer, and that when the proceedings have terminated, Meyer will regain possession of his stock. However, there is absolutely no proof of any secret agreement between them, and in view of the fact that payments were made shortly after the transfer amounting to more than the value of the stock which was estimated to be worth about $5,000, the explanation of the parties seems reasonable. We therefore do not agree with appellant that there was no consideration for the transfer. The burden is, of course, upon the trustee to prove that the conveyance is a fraudulent one. "While certain circumstances will give rise to an inference of fraud, yet the law never presumes it. It devolves on him who alleges fraud to show the same by satisfactory proof." Jones v. Simpson, 116 U.S. 609, 6 S.Ct. 538, 541, 29 L.Ed. 742. See, also, Murphy v. Suir (C.C.A.) 16 F.(2d) 269; Harmon v. Perry, 133 Me. 186, 175 A. 310.

We think the evidence in this case falls short of the proof necessary to avoid the transfer under section 70(e). Appellant objects to the degree of proof required of him, and also to certain findings of the master which he claims are not supported by the evidence. While it is true that in a civil case, only a preponderance of evidence is required to maintain the burden of proof, upon a reading of the statement of evidence, we are convinced that there was ample to support the master's finding of consideration for the transfer sought to be avoided. The agreement to continue with the second property transaction without further objection which could have reasonably been raised on the ground of the misrepresentation, furnished the consideration necessary to make Rolfs a bona fide holder for value.

Decree affirmed.