· EVERETT J. BRAGDON
*vs.*
CHARLES A. CHASE
d/b/a CHASE & KIMBALL

Penobscot.    Opinion, August 14, 1953.

*B. M. Siciliano*, for plaintiff.

*C. W. & H. M. Hayes*, for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, NULTY, WIL-
LIAMSON, TIRRELL, JJ.

NULTY, J.    This is an action of tort for deceit brought to recover damages for an alleged misrepresentation of the model year of a new and unused two-ton Ford truck sold by the defendant to the plaintiff on December 7, 1949.

The defendant filed a plea of general issue and the case comes before us on exceptions by the plaintiff to the granting of a motion for a directed verdict for the defendant at the September 1952 Term of the Penobscot County Superior

Court. The bill of exceptions presents the single issue of law arising out of the allegation in the bill that plaintiff is aggrieved by the directed verdict ordered by the trial court. The facts are as follows:

The defendant in December, 1949, was engaged in the automobile sales business and was selling Ford trucks. The plaintiff, who was a pulp buyer and contractor, approached him relative to the purchase of a new two-ton Ford truck, stating that if he could get a new two-ton 1950 Ford truck he would at once trade. According to the plaintiff the defendant said he had a new two-ton 1950 Ford truck that would meet the specifications of the plaintiff, whereupon the defendant examined, or caused to be examined, plaintiff's truck and while the plaintiff did not see the new truck which he bought from the defendant, from the evidence and the conditional sale agreement admitted in evidence, it is apparent that the parties, on December 7, 1949, traded trucks. According to the record, the defendant received plaintiff's truck in part payment for the new and unused two-ton Ford truck. Plaintiff then testified that about five months later he discovered that the truck was not a 1950 truck—but a 1949 truck—which information he received from a sales agent of the Ford Motor Company. It appears from the record that there was no change in model between Ford trucks manufactured in 1949 and 1950 by the Ford Motor Company. They were in all respects physically identical and an examination of the serial numbers would not indicate the year of manufacture. It also appears that for registration identification purposes the Ford Motor Company suggested to its dealers that sales of new and unused trucks purchased during 1949 from its dealers and completed prior to January 1, 1950, should be billed as 1949 models and that if sold thereafter the trucks should be billed as 1950 models. The evidence clearly shows that the plaintiff, after receiving information that the truck which he had purchased from the

defendant was a 1949 model, kept and used it until November 1951 when he traded it and received an allowance based on the fact that the truck was a 1949 model and that the allowance so received was approximately $200.00 less than the plaintiff would have received had the truck been a 1950 model. The plaintiff alleges in his declaration that the loss of approximately $200.00 was occasioned by the misrepresentation of the defendant that the truck sold by the defendant to the plaintiff was a 1950 model and that is the basis of his action for deceit. Plaintiff was asked in cross examination what difference there was between a 1949 truck and a 1950 truck at the time he learned that the truck was a 1949 truck instead of a 1950 truck and his answer was "discontinuation day." He was further asked if he learned of any other difference between the 1949 and the 1950 truck and his answer was "I don't think there was any." Questioned further, he testified that there was no difference except the year and the retail value. It also appears that plaintiff made no attempt at the time of the purchase of the new truck by questioning or otherwise to determine whether the new truck so purchased by him which he had not seen was anything other than a 1950 truck although at the date of purchase, to wit, December 7, 1949, it is very apparent that the new truck could not have been manufactured in 1950. The plaintiff also produced a witness who qualified as having been connected with the automobile business for many years and who assisted in appraising the truck which plaintiff traded towards the purchase of the new truck from the defendant. The witness testified that the only way he knew that this truck was a 1949 truck was because it was bought in December of 1949 and he also testified under further questioning that if there were on the floor of the sales room on January 1, 1950, a 1949 and a 1950 model there would be no difference in the price and there would be no difference in their fair market value.

On this testimony the court directed a verdict for the defendant and this court is now asked to sustain the plaintiff's exceptions.

We have many times within recent years set forth the rules with respect to the propriety of granting a nonsuit or a directed verdict and without quoting at length from our former opinions we again state the rule set out in *Williams* v. *Bisson et al.*, 142 Me. 83, 85, 46 A. (2nd) 708:

> "A non-suit, or a directed verdict for the defendant, should be ordered on proper motion whenever all the evidence viewed most favorably to the plaintiff would not support a verdict in his favor, *Lander* v. *Sears, Roebuck & Co.*, 141 Me., 422, 44 A., 2d, 886 and cases cited therein, — — — — —."

See also *Kimball* v. *Cummings*, 144 Me. 331, 68 A. (2nd) 625, 627, quoting from *Barrett* v. *Greenall*, 139 Me. 75, 80, 27 A. (2nd) 599, 601. We said in *Shine* v. *Dodge*, 130 Me. 440, 442, 157 A. 318:

> "A purchaser, defrauded in a contract of sale, may elect one of two remedies. He may rescind the sale, and, in an action of assumpsit for money had and received, recover back the purchase price; or he may without rescission sue in tort for deceit. *Carey* v. *Penney*, 129 Me., 320. In such case the measure of his damages is the difference between the actual value of the property at the time of the purchase and its value if it had been as represented. *Wright* v. *Roach*, 57 Me., 600; *Mullen* v. *Eastern Trust & Banking Co.*, 108 Me., 498; *Morse* v. *Hutchins*, 102 Mass., 439. - - - - - - - - - - - - - - - - - - -.

> "The essential elements of an action for deceit have been so often and so recently stated by this court that it is unnecessary to reiterate them. *Allan* v. *Wescott*, 115 Me., 180; *Prince* v. *Brackett, Shaw & Lunt Co.*, 125 Me., 31; *Gilbert* v. *Dodge*, 130 Me., 417."

In *American Jurisprudence*, Sec. 206, under the heading Fraud and Deceit, B. Defenses, we find the following:

"§ 206. Generally. — There are many defenses available to an action for damages for fraud, some of which may be based upon the absence in the case of one or more of the elements essential to the predication of such an action. Thus, the right of action may be negatived on the ground - - - - - or that the complainant sustained no damage by reason of his reliance upon the alleged misrepresentation."

We said in *Mitchell* v. *Mitchell,* 136 Me. 406, 415, 11 A. (2nd) 898,

"To recover in an action for deceit, something more than the falsity of the statement relied on must be shown. Each and every other element required to constitute deceit must be proved, and when it is apparent that any one of them has failed of proof, the plaintiff is not entitled to relief. It then becomes entirely unnecessary to decide whether or not the other required elements have been established by the evidence."

In the recent case of *Coffin* v. *Dodge,* 146 Me. 3, 6, 76 A. (2nd) 541, we said in respect to proof of the necessary elements in deceit:

"Every one of these elements must be proved affirmatively to sustain an action of deceit."

The plaintiff in the instant case alleges that the representation was material which, by the way, is a question of law. See *Caswell* v. *Hunton,* 87 Me. 277, 32 A. 899. Whether the representation in the instant case was material and whether it was false, questions not entirely free from doubt, in the view we take of the case it is unnecessary to decide because the plaintiff's testimony and that of his witness clearly proves, when considered in a light most favorable to the plaintiff, that the plaintiff suffered no damage as a result of the representation made assuming that it was a false representation and was material. As a general rule, damages

in deceit are determined as of the date of the sale and not at a subsequent date. See *Coffin* v. *Dodge, supra; Stewart* v. *Winter,* 133 Me. 136, 139, 174 A. 456; *Williams* v. *Bisson, supra, Shine* v. *Dodge, supra, Am. Law Institute, Restatement of the Law, Torts, Deceit,* Sec. 549. We said in *Williams* v. *Bisson et al., supra:*

> "There can be no point in discussing the evidence relative to damages in a case where liability has not been established - - - - -."

We also said in *Stewart* v. *Winter, supra:*

> "Still, unless damage results from the representation, while there may be such fraud as to justify a rescission or an avoidance of the contract, yet there must proximately result actual damage in order to maintain an action of deceit. Without damage it is not actionable fraud."

*Restatement of the Law, Tort, Deceit,* under Comment on Clause (a), Sec. 549, *supra,* contains these significant words:

> "If notwithstanding the falsity of the representation the thing which a vendee acquires is of equal or greater value than the price paid and he has suffered no harm through using it in reliance upon its being as represented, he has suffered no loss and can recover nothing."

According to our decisions, every one of the elements of deceit must be proved by full, clear and convincing evidence. We said in *Crossman* v. *Bacon & Robinson Company, et al.,* 119 Me. 105, 109 A. 487, and we again cited that case in *Coffin* v. *Dodge, supra,* the following with respect to an action of deceit:

> "For the action of deceit was not intended to be made easy to prove. Its purpose was to restrain law suits in commercial and trading transactions so that every time a party, through reliance upon opinion, or trade talk, or without taking pains to

inquire for himself, got the bad end of a bargain he should not be permitted to fly to the courts for redress."

The evidence, as we have heretofore indicated, clearly shows that as of the date of the original sale, December 7, 1949, or even January 1, 1950, there was no difference whatsoever in value between the 1949 Ford truck and a 1950 Ford truck new and unused. Accordingly, whether the representation was material or whether it was false, the plaintiff's evidence, when viewed most favorably fails to show that he suffered any damage at the time of the purchase of the truck and under the applicable rules of law hereinbefore laid down he cannot recover in the present form of action. The action of the trial court in directing a verdict for the defendant was correct, and the mandate will be

*Exceptions overruled.*