DOUGLAS S. COX ET AL.
*vs.*
HERSCHEL E. SINCLAIR

Penobscot.   Opinion, March 17, 1958.

*Gerald E. Rudman,* for plaintiff.

*Dubord & Dubord,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY,. SULLIVAN, JJ. DUBORD, J., did not sit.

BELIVEAU, J. On exception and motion for new trial. At the close of the evidence the defendant moved for a directed verdict, which motion was denied and exception taken. After verdict for the plaintiffs the defendant filed the usual motion for a new trial.

The parties agree that the exception and motion raise the same question, and, for that reason, will not be discussed separately in this opinion.

On the 4th of January 1956, the plaintiff and his wife were owners, as joint tenants, of a house located at 373 Hancock Street in Bangor. On the same day the defendant was the owner of a crane, weighing about 24 or 25 tons, which was then in charge of, and operated by, one Glendon I. Sinclair, who was the brother and agent of the defendant. On the morning of that day, Glendon operated the crane from Veazie, some few miles from Bangor, with the railroad yards in Bangor as his destination. In the operation of the crane, he had occasion to bring it to a stop several times before he reached Birch Street in Bangor. It is his testimony that the brakes operated properly until he reached Birch Street. He came on to Birch Street from State Street when he had occasion to bring the crane to a stop. After he entered Birch Street and before he started to go down grade on that street, he applied the brakes, as he says, to ease the crane down the hill and for the first time that morning, so he testified, the brakes failed to function. He then shifted to high gear and on inquiry by the court testified he shifted to fifth gear and that this gave him more speed while going down grade on Birch Street. As a result of this situation,

he directed the crane down Birch Street, across Hancock Street and on the lawn situated between the house of the plaintiffs and a neighbor's. At that time the crane was in motion and continued across this lawn, down a steep embankment and landed on the railroad tracks of the Maine Central Railroad. As he crossed this lawn, he struck the corner of the plaintiffs' home and completely demolished a shed which was attached to the buildings.

Defendant advances the argument that the plaintiffs having called the driver as their witness, are bound by his testimony and cannot question it, and as authority for this, the defendant cites *Harmon* v. *Perry*, 133 Me. 186. In that case our court recognized this as the general rule, but said it would not apply if "contradicted by credible evidence of probative value." In this case there was evidence which, if believed by the jury, would make this rule inapplicable.

The plaintiffs' case is based on their claim that the defendant was negligent in the operation of the crane. On the other hand, the operator of the crane testified that when he applied the brakes, just before reaching the incline on Birch Street, they refused to function and that this created an emergency, for which the defendant was not responsible and for that reason the plaintiffs are not entitled to any damages.

The rule is well established in Maine, affirmed time and time again by this court, that a verdict cannot be disturbed,

". . . if, giving to the plaintiffs the most favorable view of the facts and of every justifiable inference to be drawn from them, different conclusions as to the defendant's negligence could fairly have been drawn by different minds."

*Andreu, Dostie* v. *Wellman*, 144 Me. 38

Having in mind the rule, can it be said that the jury erred? Our answer is in the negative.

Assuming that evidence of a sudden failure of the brakes stood uncontradicted and entirely consistent with the course taken by the crane, were there nevertheless questions for the jury to determine? Here was a vehicle weighing approximately 25 tons about to start down an incline. The operator knew that because of its length the crane would have to be brought to a full stop part way down the hill in order to make a sharp turn. The operator committed his vehicle to the grade at a speed of 10 miles per hour and in a middle gear rather than a low gear. The jury could find on the evidence that the road surface was wet, snowy, slushy and slippery and that where the snow was packed down it was icy. The operator had a duty to exercise care in accordance with the size and weight of the crane, his ability to steer and control it especially around steep curves, the steepness of the grade and the condition of the road surface. It was therefore for the jury to say whether or not under all these circumstances the operator should have started down the hill relying only upon his brakes; whether or not he should have approached and reached the top of the grade at a lesser speed or in low gear; and whether or not he should have tried his brakes or taken any other precautions before letting his vehicle actually begin to descend. The jury must have decided, as they could upon the evidence, that in one or more of these respects the defendant's agent was negligent and that negligence was a proximate cause of the accident.

There is much "here" and "there" testimony which is not helpful to the court. A chalk, no part of the record, was placed on the blackboard and from this some of the witnesses pointed, for the jury's benefit, certain spots or places to show the location where some of the events took place. We do not get the benefit of this testimony.

376

We might or might not reach the same conclusion as that reached by the jury, but, in our opinion there is enough evidence in the case to justify the verdict.

*Exception overruled.*

*Motion denied.*