**CITY OF SOUTH PORTLAND**

v.

**PINE STATE BY–PRODUCTS, INC.**

Supreme Judicial Court of Maine.

June 12, 1973.

Henry Steinfeld, Robert A. Wilson, Portland, for plaintiff.

Bennett & Schwarz, P. A. by John N. Kelly, Herbert H. Bennett, Barry Zimmerman, Harry H. Marcus, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE and ARCHIBALD, JJ.

WEBBER, Justice.

On July 25, 1967 defendant corporation, a rendering plant engaged in converting fish, meat and poultry waste products into commercially salable materials, was permanently enjoined from causing or allowing offensive odors injurious or dangerous to the health, comfort or property of individuals or of the public to escape from the defendant's plant to such a degree that they are detectable in any manufacturing or military or other facility or place in the vicinity of its plant by a person of normal or average sensitivity to odors.[1]

On August 10, 1971 the plaintiff City of South Portland, wherein defendant's plant is located, filed its complaint charging that on June 2, 1971 and sundry occasions thereafter the defendant disobeyed said order and was in contempt thereof. The matter came on to be heard by a single Justice who found for the defendant. Plaintiff's appeal brings the matter to us for review.

Appellant first contends that reversible error was committed when an expert witness offered by defendant was permitted to express an opinion and advance a theory outside the realm of his training and experience. Dr. Amos Turk, admittedly a qualified expert witness with extensive practical and theoretical training and experience in the field of detection and control of industrial odors and with particular knowledge of the problems and control system in defendant's plant, gave a detailed explanation of that control system and reached certain conclusions with respect to its effectiveness. That his expert opinion was deemed to be persuasive by the Justice below was clearly evidenced by the findings made in this case. These findings included the following:

"I was much impressed by the testimony of Dr. Turk who was called as a witness for the Defendant. That he is an expert in the field of odor control is established by concession. It was his unqualified judgment that the odors complained of could not have come from the Defendant's plant in the absence of any breakdown of the odor control equipment or the use of material which had putrified to a degree it gave off odor beyond the control of the odor control system.

There was no evidence whatsoever that the odor control equipment had broken down at any time or that the plant had used unsuitable material in its processing. As a matter of fact there was

---

1. We have here paraphrased the language of the injunctive order to the extent necessary to adequately present the issue here raised.

evidence and I do find that on some occasions when the complaints of odor were made the plant was not in operation. * * *

In the present instance I am not satisfied from the evidence that this plant has been the source of any noxious odors on the dates on which complaints were registered."

Since these findings were firmly based on credible evidence, they were determinative of the issue of contempt. The point sought to be raised by appellant can be better understood if the evidentiary background be further elaborated. The plaintiff had presented a number of witnesses, private citizens and South Portland police officers, who described their detection of noxious odors on various dates which they concluded had emanated from defendant's plant. None of these witnesses, however, had entered the defendant's plant to observe whether the plant was operating or whether the control system was functioning. It is apparent that neither the defendant nor the Justice below believed that these witnesses were knowingly and intentionally giving false testimony. It was the theory of the defendant, ultimately accepted by the factfinder, that these witnesses did in fact detect noxious odors but were honestly mistaken as to their source. In this connection the findings state:

"Neither the sincerity nor the truthfulness nor the accuracy of any of the complainants is in doubt in my mind.

I have come to the irresistible conclusion from the evidence that from time to time there were odors so noxious as to produce nausea in the complainants. I have no doubt as to the sincerity or truthfulness of the investigating officers. I do have serious doubts as to the method by which they arrived at their conclusions that the noxious odors emanated from this plant.

* * * * * *

I am satisfied, however, that though the officers who investigated and testified were most certainly in good faith when they attributed the specific odors which they detected to this plant, they could well have been in error in attributing the odors to this particular source."

In support of its theory that plaintiff's witnesses, though not untruthful, were honestly mistaken, the defendant elicited from Dr. Turk, over plaintiff's objection, testimony explanatory of the theory of "false alarm." In effect the witness stated that he and other experts engaged in the field of sensory evaluation of materials and detection problems have determined on the basis of their own experience and that of others that one may be predisposed to expect a certain odor from a certain source and as a result sometimes conclude that he detects an odor which does not exist or that an odor he detects emanates from an expected source when in fact it emanates from a different source. The objection to this evidence was grounded on the contention that the "false alarm" theory involved psychiatry and psychology, fields in which the witness had no training and professed no special competence. We discern no error in admitting the testimony. The discretionary ruling of the Justice below as to the qualifications of an expert witness did not depend upon assigning labels to particular learning and experience of the witness. The witness demonstrated knowledge and competence in the area of sensory perception of odors which fully qualified him to furnish an opinion as to possibility of human error in detection and the reasons for it. The main issue, whether or not noxious odors emanated from defendant's plant, was decided on the basis of other evidence. The "false alarm" theory related only to whether the plaintiff's witnesses were honestly mistaken. In either event the Justice below was not disposed to accept their testimony as probative. It is understandable that the Justice below should not wish to have the public or the plaintiff's witnesses infer from a finding adverse to plaintiff that he had concluded

that these witnesses had been other than truthful. Dr. Turk's theory did no more than to support his conviction that they had made an understandable human error in detection.

■ Appellant's second contention relates to the factfinder's alleged misuse of a view of defendant's premises. At the request of both parties the Justice below visited the area in the company of opposing counsel. When the hearing was resumed he spread upon the record a detailed report of the observations made at the scene. This included the detection of a number of odors in the area and their apparent sources, as well as a negative observation as to any unpleasant odor emanating from defendant's plant. It is apparent from the ensuing colloquy that the sensory perceptions of counsel at the scene were the same as those recorded by the Court, and indeed counsel for plaintiff stated for the record, "I think you have been very fair in your description." The findings include a fair summation of the report of the view spread upon the record.

Clearly it would have been error for the factfinder to find, for example, that because no offensive odors were emanating from defendant's plant at the time of the view, the same condition obtained on other occasions earlier in the summer. In State v. Slorah (1919) 118 Me. 203, 106 A. 768 we adhered to the rule that a view is not evidence and is taken only to assist the factfinder in better understanding the evidence otherwise produced.[2] It is unnecessary to consider here whether or not the Slorah rule wholly accords with reality or is unnecessarily restrictive. Cf. Chouinard v. Shaw (1954) 99 N.H. 26, 104 A.2d 522. For in our opinion the use made of the view, including the detection of odors by the Justice below, did not violate the Slorah rule. The situation is closely akin to that discussed above in connection with the

"false alarm" theory. On the basis of credible evidence the Justice was persuaded that on the dates of the complaints the odors could not and did not originate in defendant's plant. He also had evidence from witnesses as to the presence and sources of other noxious odors in the area, particularly odors emanating from the Stauffer Chemical Co. plant close by the defendant's premises. What he saw and smelled in the course of the view enabled him to better understand the testimony and, above all, to comprehend how it was possible for a number of truthful witnesses to fall into the same error as to the source of the offensive odor they detected. It may be noted, for example, that none of these witnesses was aware that Stauffer Chemical Co. was also at times the source of an industrial odor. We are satisfied that the determinative factual conclusions reached by the factfinder rested upon and were fully supported by credible evidence and were not based upon any misuse of the view as evidence.

■ Finally, appellant contends that "there was insufficient evidence to support the finding of the Court." M.R.C.P. Rule 52(a) provides in part, "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Findings are not "clearly erroneous" if supported by credible evidence. Ray v. Lyford (1958) 153 Me. 408, 140 A.2d 749. The Justice below was of the view that in a civil contempt proceeding based upon an alleged violation of an injunctive order, the plaintiff should have the burden of proving the violation by "clear and convincing" evidence. The plaintiff does not contend otherwise and we agree. Although proof beyond a reasonable doubt is not required, the fact that sanctions may result suggests the need for something more than proof by a bare

2. *Slorah* recognizes as exceptions statutory real actions and land damage cases as well as cases in which it is necessary to examine personal property that cannot conveniently be presented in court as exhibits.

preponderance of the evidence. See Kansas City Power & Light Co. v. Nat. L. R. Board (1943) 8 Cir., 137 F.2d 77, 79. Our research and that of counsel have not disclosed any Maine case in which the requisite quantum of proof in a contempt proceeding has been considered, but the concept of proof by "clear and convincing evidence" is not unfamiliar to our Bench and Bar. Bragdon v. Chase (1953) 149 Me. 146, 99 A.2d 308; Harmon v. Perry (1934) 133 Me. 186, 175 A. 310. Our discussion above makes it apparent that the witnesses relied upon by the plaintiff were deemed by the factfinder to be wholly truthful but honestly mistaken as to their observations. Thus the plaintiff failed to sustain the somewhat rigorous burden of proof imposed upon it in this contempt proceeding.

Other points sought to be raised by the appellant are without merit and require no discussion here.

The entry will be

Appeal denied.

POMEROY and WERNICK, JJ., did not sit.